IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Liberty Mutual Fire Insurance Company and Employers Insurance of Wausau, a Mutual Company, ) ) ) ) | Civil Action No. 2:08-2043-MBS |
| Plaintiffs, ) ) | **ORDER AND OPINION** |
| vs. ) ) | |
| J.T. Walker Industries, Inc., f/k/a Metal Industries, Inc.; and MI Windows & Doors, Inc., f/k/a MI Home Products, Inc. and Metal Industries, Inc. of California, ) ) ) ) ) ) | |
| Defendants. ) ) | |

Plaintiffs Liberty Mutual Fire Insurance Company and Employer's Insurance of Wausau (collectively "Liberty Mutual") filed this action on May 29, 2008 against Defendants J.T. Walker Industries, Inc. ("J.T. Walker") and MI Windows & Doors, Inc. ("MI Windows") (collectively "Defendants") seeking a declaratory judgment of the rights and obligations of the parties under certain insurance policies issued to Defendants with respect to the defense and settlement of five underlying state court suits. On August 4, 2008, Defendants answered the complaint and MI Windows asserted a counterclaim for breach of contract against Liberty Mutual. On February 19, 2009, MI Windows amended its counterclaim against Liberty Mutual.

This case is before the court on a motion for summary judgment filed by Liberty Mutual on March 12, 2009.[1] On April 30, 2009, Defendants responded to this motion. On May 11, 2009,

---

[1] This was Liberty Mutual's second motion for summary judgment. Liberty Mutual's first motion for summary judgment dealt with choice of law. Entry 17. The parties have stipulated that South Carolina law applies to all issues in this case. Entry 19.

Liberty Mutual replied. On June 30, 2009, Defendants filed a supplemental response and on July 13, 2009, Liberty Mutual replied. On August 28, 2009, Defendants filed a second supplemental response to which Liberty Mutual replied on September 1, 2009.

Also before the court is a motion to compel filed by Liberty Mutual on October 20, 2009. On November 25, 2009, MI Windows responded to Liberty Mutual's motion to compel, agreeing to produce all of the requested documents with the exception of documents from the Gary Law Group that "contain opinion work product or attorneys' mental impressions that were not communicated to MI Windows or anyone outside of the Gary Law Group."[2] On December 11, 2009, Liberty Mutual replied to MI Windows' response to its motion to compel.

Also before the court is a motion for partial summary judgment filed by Defendants and another motion for summary judgment filed by Liberty Mutual, both of which were filed on October 23, 2009. On November 25, 2009, the parties responded to the motions for summary judgment. On December 16, 2009, the parties filed their replies to the motions for summary judgment. On January 11, 2009, Defendants filed a third supplemental response to Liberty Mutual's March 12, 2009 motion for summary judgment. On February 3, 2010, the court held a hearing on all of the above motions. On February 17, 2010, Defendants filed a fourth supplemental submittal in response to an evidentiary inquiry made by the court at the hearing, to which Liberty Mutual replied on February 18, 2010. On February 26, 2010, the parties filed a joint supplement containing documents relevant to Liberty Mutual's Third Motion for Summary Judgment.

---

[2] This is the law group of Paul Gary, MI Windows' independent counsel in the underlying actions.

## BACKGROUND

This case is predicated on five underlying state court suits filed against MI Windows in South Carolina alleging that products manufactured by MI Windows were defective.[3] Liberty Mutual issued six commercial general liability insurance policies to MI Windows' parent company J.T. Walker that provided coverage from May 1, 1997 to July 1, 2003 (hereinafter "the Policies").[4] From July 1, 2003 to March 31, 2008, MI Windows obtained insurance coverage from Zurich North America.

Liberty Mutual has settled each of the underlying state lawsuits subject to MI Windows' objection that Liberty Mutual should have taken the cases to trial. MI Windows contends that additional lawsuits are pending against it and more are expected to be filed because of the prevalence of construction defect lawsuits.

---

[3]
- Riverwalk at Arrowhead Country Club Property Owners' Association, Inc. v. MI Home Products, et al., CA No. 03-CP-26-7169, Horry County, South Carolina ("Riverwalk");
- Avian Forest Homeowners' Association v. MI Windows & Doors, Inc. et al., CA No. 02-CP-22-0687, Horry County, South Carolina ("Avian Forest");
- Marais Property Owners' Association v. MI Windows, et al. CA No. 05-CP-10-1140, Charleston County, South Carolina ("Marais");
- Magnolia North Homeowners Association v. MI Windows, et al., CA No. 05-CP-26-0044, Horry County, South Carolina ("Magnolia North"); and
- Tilghman Shores Homeowners' Association v. MI Windows, et al. CA No 03-CP-26-4021, Horry County, South Carolina (Tilghman Shores").

[4]
- Wausau Insurance Companies, Policy Number 4828-00-000217, Policy Period May 1, 1997 to May 1, 1998, issued to Metal Industries, Inc.
- Wausau Insurance Companies, Policy Number 4828-00-000217, Policy Period May 1, 1998 to May 1, 1999, issued to J.T. Walker Industries, Inc.
- Wausau Insurance Companies, Policy Number 4828-00-000217, Policy Period July 1, 1999 to July 1, 2000, issued to J.T. Walker Industries, Inc.
- Liberty Mutual Insurance Policy No. RG2-651-004245-030, Policy Period July 1, 2000 to July 1, 2001, issued to J.T. Walker Industries, Inc.
- Liberty Mutual Insurance Policy No. RG2-651-004246-031, Policy Period July 1, 2001 to July 1, 2002, issued to J.T. Walker Industries, Inc.
- Liberty Mutual Insurance Policy No. RG2-651-004246-032, Policy Period July 1, 2002 to July 1, 2003, issued to J.T. Walker Industries, Inc.

**DISCUSSION**

A.     Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P . 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991). All that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

B.     Liberty Mutual's Motion for Summary Judgment

   1.     Whether Liberty Mutual has the Right to Settle Claims Against MI Windows in its Sole Discretion Under the Policies

Liberty Mutual argues that once MI Windows tendered the underlying state court actions to it in 2003, the Policies gave Liberty Mutual a duty and right to control the defense and settlement

of these actions. The court agrees.

The interpretation of an insurance policy is a legal issue under South Carolina law. *City of Hartsville v. S.C. Mun. Ins. & Risk Financing Fund*, 677 S.E.2d 574, 578 (S.C. 2009) (citing *State Farm Mut. Auto. Ins. Co. v. James*, 522 S.E.2d 345, 348-49 (S.C. Ct. App. 1999)). When a contract is clear and unambiguous, the contract language alone determines how the contract is enforced and the contract terms must be construed by the court to give effect to their "plain, ordinary, and popular meaning." *Laidlaw Envtl. Servs. (TOC), Inc. v. Aetna Cas. & Sur. Co. of Ill.*, 524 S.E.2d 847, 850 (S.C. Ct. App. 1999) (citing *Dorman v. Allstate Ins. Co.*, 504 S.E.2d 127, 129 (S.C. Ct. App. 1998)). Courts cannot use construction to change a contract or agreement. *Gilstrap v. Culpepper*, 320 S.E.2d 445, 447 (S.C. 1984). Rather, courts can only interpret contracts as they are written. *Id.* "Extrinsic evidence giving [a] contract a different meaning from that indicated by its plain terms is inadmissible." *C.A.N. Enter., Inc. v. S.C. Health & Human Servs. Fin. Comm'n*, 373 S.E.2d 584, 586 (S.C. 1988) (citing *Superior Auto. Ins. Co. v. Maners*, 199 S.E.2d 719, 722 (S.C. 1973)). Only when a contract is ambiguous may extrinsic evidence be admitted to aid interpretation. *Rhame v. Nat'l Grange Mut. Ins. Co.*, 121 S.E.2d 94, 97 (S.C. 1961); *see also Ward v. West Oil Co., Inc.*, 665 S.E.2d 618, 626 (S.C. Ct. App. 2008).

Whether a contract's language is ambiguous is a question of law. *S.C. Dep't of Natural Res. v. Town of McClellanville*, 550 S.E.2d 299, 302-03 (S.C. 2001). A contract is ambiguous "only when it may fairly and reasonably be understood in more ways than one." *Hansen v. United Servs. Auto. Assoc.*, 565 S.E.2d 114, 117 (S.C. Ct. App. 2002). Ambiguity cannot be created by pointing to a single sentence or clause. *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 349 (S.C. 1976). In construing an insurance contract, a court must consider all of its provisions. *Id.*; *see also*

*Edward Pinckney Assoc., Ltd. v. Carver*, 364 S.E.2d 473, 475 (S.C. Ct. App. 1987) (courts should consider the whole transaction comprising the contract between parties even when agreements have not been executed simultaneously provided that they relate to the same subject matter).

In *Doe v. South Carolina Medical Malpractice Liability Joint Underwriting Association*, the Supreme Court of South Carolina addressed the issue of exclusive control of settlements by an insurer and found that an insurance contract unambiguously granted an insurance company the authority to settle all claims arising under the policy when the contract stated that the insurance company "shall have the right and duty to defend in his name and behalf any suit against the Insured alleging damages, even if such suit is groundless, false or fraudulent, but [the insurance company] shall have the right to make such investigation and settlement of any claim or suit as may be deemed expedient by [the insurance company]." 557 S.E.2d 670, 674-75 (S.C. 2001).

> Each of the Policies states:
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, *at our discretion*, investigate any 'occurrence' and settle any claim or 'suit' that may result.

*See, e.g.,* Wausau Insurance Companies, Policy Number 4828-00-000217, Policy Period May 1, 1997 to May 1, 1998, Section I. Coverages, Coverage A Bodily Injury and Property Damage liability, Insuring Agreement (emphasis added).

The wording in each of the Policies indicates that Liberty Mutual has the authority to control settlement decisions at its discretion. Other provisions in the Policies lend support to this authority. Under the "Supplementary Payments" section, the Policies state, "[W]e will pay, with respect to any

6

claim *we* investigate or *settle* or any 'suit' against an insured we defend . . . ." *See, e.g.,* Wausau Insurance Companies, Policy Number 4828-00-000217, Policy Period May 1, 1997 to May 1, 1998, Commercial General Liability Coverage Form at 8 (emphasis added); Liberty Mutual Insurance Policy No. RG2-651-004246-032, Policy Period July 1, 2002 to July 1, 2003, Commercial General Liability Coverage Form at 8 (emphasis added). In addition, the "Commercial General Liability Conditions" section of each policy states that in the event of an occurrence or claim, the insured must "cooperate with [Liberty Mutual] in the investigation or settlement of the claim or defense against the 'suit.'" *See, e.g.,* Wausau Insurance Companies, Policy Number 4828-00-000217, Policy Period May 1, 1997 to May 1, 1998, Commercial General Liability Coverage Form at 12-13; Liberty Mutual Insurance Policy No. RG2-651-004246-032, Policy Period July 1, 2002 to July 1, 2003, Commercial General Liability Coverage Form at 12.

Liberty Mutual conceded at the hearing that the Special Servicing Instructions ("SSIs"), which are issued to streamline the claims adjusting process, should be considered part of the Policies for the purposes of summary judgment. Liberty Mutual argues that the SSIs only require that Liberty Mutual *discuss* any settlement of $5000 or more with MI Windows and that the SSIs do not create ambiguity as to who controls settlements under the Policies. MI Windows argues that the requirement in the SSIs that Liberty Mutual discuss settlements with MI Windows makes the Policies ambiguous with regard to whether Liberty Mutual has sole discretion to settle tendered cases.

The SSIs do not contradict Liberty Mutual's settlement authority. The SSIs from October 11, 2001 and January 13, 2003[5] state that "[c]laim settlements of $5000 and above . . . must be discussed with local contact then with Darlene Moffatt [John Roche in 2001] prior to making any offer." Entry

---

[5] These are the only SSIs that have been produced through discovery.

66, Ex. A; Entry 82, Ex. C. The American Heritage College Dictionary 397 (3d ed., Houghton Mifflin Co. 2000) (1993) defines "discuss" as: "1. to speak with others about; 2. to consider in speech or writing." A discussion does not require MI Windows' approval of settlements. Therefore, based on the plain language of the contract, MI Windows does not have the right to approve settlement decisions.

MI Windows, relying on California case law,[6] seeks to admit extrinsic evidence of the course of performance of the insurance contracts to demonstrate that it has the right to approve settlements under the Policies. South Carolina case law does not permit the court to consider extrinsic evidence unless a contract is ambiguous or silent on an issue. *See C.A.N. Enter., Inc. v. S.C. Health & Human Servs. Fin. Comm'n*, 373 S.E.2d 584, 586 (S.C. 1988) (citing *Superior Auto. Ins. Co. v. Maners*, 199 S.E.2d 719, 722 (S.C. 1973)); *Rhame v. Nat'l Grange Mut. Ins. Co.*, 121 S.E.2d 94, 97 (S.C. 1961); *City of Greenville v. Washington Am. League Baseball Club*, 32 S.E.2d 777, 782 (S.C. 1945). Moreover, to the extent that Defendants seek to admit extrinsic evidence to prove the terms of the SSIs prior to 2001, the court finds that the most recent SSIs govern the relationship between the parties because the claims were not submitted to Liberty Mutual before 2003. Based upon the foregoing, the court concludes that Liberty Mutual has the right to control settlement decisions under the Policies. Liberty Mutual's motion for summary judgment is granted as to this issue.

---

[6] *Employers Reinsurance Co. v. Superior Court*, 64 Cal. Rptr. 3d 733 (Cal. Ct. App. 2008) (finding that course of performance evidence is relevant to the interpretation of insurance contracts and can be used to expose a latent ambiguity).

### 2. Whether a Single Insurance Policy Must Cover Property Damage that Spans Multiple Policy Periods

Liberty Mutual argues that all of the polices triggered by a progressive damages claim provide coverage for that claim and that MI Windows cannot force Liberty Mutual to defend such a claim under a single policy.[7] The court agrees.

In *Joe Harden Builders Inc. v. Aetna Casualty & Surety Co.*, the South Carolina Supreme Court adopted a "modified continuous trigger" approach in progressive damages cases when an insurance policy contemplates coverage of progressive damages. 486 S.E.2d 89, 91 (S.C. 1997). Under this approach, "coverage is triggered at the time of an injury-in-fact and continuously thereafter . . . ." *Id.* In adopting this approach, the South Carolina Supreme Court stated that "the policy in effect at the time of the injury-in-fact covers all of the ensuing damages," but that other policies in effect during the progressive damages period were also triggered. *Id.* The South Carolina Supreme Court found that this approach would allocate risk among insurers when more than one policy is in effect during the progressive damage period. *Id.* (citing *Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, Ltd.*, 875 P.2d 894 (H.I. 1994)). In *Spartan Petroleum Co., Inc. v. Federated Mutual Insurance Co.*, the Fourth Circuit relied on *Joe Harden* in allocating liability among multiple insurance policies in a progressive damages case. 162 F.3d 805, 807, 810-12 (4th Cir. 1998). Further, in *Century Indemnity Co. v. Golden Hills Builders, Inc.*, the South Carolina Supreme Court reaffirmed the *Joe Harden* rule in ruling on a question certified from the Fourth Circuit. The South Carolina Supreme Court held that: "coverage is triggered whenever the damage can be shown in fact

---

[7] MI Windows originally alleged that Liberty Mutual was attempting to force MI Windows to pay multiple $500,000 deductibles per claim prior to contributing to any settlement on the underlying progressive damages claims, but has retracted this argument because Liberty Mutual conceded that MI Windows must pay only one $500,000 deductible per claim or occurrence to Liberty Mutual. Entry 64 at 16; Entry 81 at 13.

to have first occurred, even if it is before the damage became apparent, and the policy in effect at the time of the injury-in-fact covers all the ensuing damages. Coverage is also triggered under every policy applicable thereafter." 561 S.E.2d 355, 357 (S.C. 2002) (internal citations omitted).

In this case, the Policies state that Liberty Mutual "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *See, e.g.,* Wausau Insurance Companies, Policy Number 4828-00-000217, Policy Period May 1, 1997 to May 1, 1998, Commercial General Liability Coverage Form, Section I Coverages, Coverage A Bodily Injury and Property Damage Liability, Insuring Agreement. The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See, e.g.,* Wausau Insurance Companies, Policy Number 4828-00-000217, Policy Period May 1, 1997 to May 1, 1998, Commercial General Liability Coverage Form, Section V- Definitions. The Policies define "property damage" to include "physical injury to tangible property, including all resulting loss of use of that property," and state that "[a]ll such loss of use shall be deemed to occur at the time of the physical injury that caused it." *Id.*

This language contemplates the coverage of progressive damages resulting from an injury-in-fact that occurred during the policy period. Under South Carolina law, the Liberty Mutual policy in effect at the time of the injury-in-fact covers the full settlement of each claim, as do all other policies covering the risk during the progressive damages period. The court grants Liberty Mutual summary judgment on this issue.

3. <u>Whether Liberty Mutual Has the Right to Request Allocation of Payments Made to Defend and Settle Each Claim Against MI Windows From MI Windows' Other Insurers</u>

Liberty Mutual argues that it can compel contribution from other insurers that allegedly provide coverage triggered by the allegations of the claims in the underlying state court actions. As was discussed in the previous section, in *Joe Harden*, the South Carolina Supreme Court stated that the "modified continuous trigger" approach would allow for the allocation of risk among insurers when more than one insurance policy is in effect during the progressive damage. 486 S.E.2d at 91. This case law establishes that Liberty Mutual has the right to seek allocation of payments made to settle each of the underlying claims to MI Windows' other insurance carriers that also covered the risk. The affidavit of Darlene Moffatt indicates that the Zurich policies provided MI Windows with insurance from July 1, 2003 to March 31, 2008. Entry 99-3, Moffatt Aff. ¶ 3, October 23, 2009. Therefore, if the allegations in the underlying state court cases indicate that progressive damages occurred during this period, Liberty Mutual has a right to seek allocation of payments from Zurich pro rata based upon the length of time the risk was covered. The court grants Liberty Mutual summary judgment on this issue.

C. <u>Defendants' Motion for Partial Summary Judgment</u>

MI Windows seeks to have the court declare that if Liberty Mutual is permitted to allocate a portion of litigation costs to Zurich, MI Windows is only responsible for a proportionate amount of its $500,000 deductible. In the alternative, MI Windows seeks a declaration that it is not obligated to pay more than its single $500,000 deductible for each case/occurrence. "[I]t is Liberty Mutual's position that it has no obligation to fund the entire . . . settlement or prorate its deductible to conform to the allocation between Liberty Mutual and Zurich of defense costs and payment of the settlement

11

sum." Entry 99, Ex B ¶ 1, Letter from Liberty Mutual to MI Windows. At the hearing, both parties agreed that the Policies do not address the effect of allocation on deductibles. Thus, the Policies are not ambiguous as to this issue and the court must look to South Carolina law.

The parties agree that no South Carolina case addresses the affect, if any, of allocation upon an insured's responsibility to pay deductibles. As a result, the court will certify a question to the South Carolina Supreme Court pursuant to the privilege made available by Rule 244 of the South Carolina Appellate Court Rules. *See Med. Protective Co. of Fort Wayne, Indiana v. South Carolina Med. Malpractice Liab. Ins. Joint Underwriting Ass'n*, C.A. Nos. 3:08-2184-CMC, 3:08-2222-CMC, 2009 WL 2567774, at *6 (D.S.C. Aug. 17, 2009). The parties are directed to submit questions to the court for certification to the South Carolina Supreme Court within fifteen (15) days of the issuance of this order. The court holds in abeyance a ruling on Defendants' motion for partial summary judgment until the Supreme Court of South Carolina provides guidance on this issue.

D. <u>Liberty Mutual's Third Motion for Summary Judgment</u>

1. *Whether there is a Genuine Issue of Material Fact*

Liberty Mutual argues that unless the court finds that there is a genuine issue of material fact as to whether MI Windows has the authority to approve settlements under the Policies, MI Windows' bad faith claim must fail. The court disagrees.

"[T]here is an implied covenant of good faith and fair dealing in every insurance contract that neither party will do anything to impair the other's rights to receive benefits under the contract." *Tadlock Painting Co. v. Maryland Cas. Co.*, 473 S.E.2d 52, 53 (1996) (internal citations and quotation marks omitted.). Generally, an insured can recover for a bad faith denial of coverage claim if the insured proves that there was "no reasonable basis to support the insurer's decision to deny

benefits" under an insurance contract. *Cock-N-Bull Steak House, Inc. v. Gen. Ins. Co.*, 466 S.E.2d 727, 730 (1996). However, "the covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed." *Mixson, Inc. v. Amer. Loyalty Ins. Co.*, 562 S.E.2d at 662 (citing *Tadlock*, 473 S.E.2d at 52). "[I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." *Tadlock*, 473 S.E.2d at 53 (quoting Nichols, 306 S.E.2d at 619).

South Carolina has recognized the rule that "[b]ad faith is a knowing failure on the part of the insurer to exercise an honest and informed judgment in processing a claim.... [A]n insurer acts in bad faith where there is no reasonable basis to support the insurer's decision." *Doe*, 557 S.E.2d at 674 (citing *Amer. Fire & Cas. Co. v. Johnson*, 504 S.E.2d 356, 358 (Ct. App. 1998); *Cock-N-Bull*, 466 S.E.2d 727; *see also Mixon*, 562 S.E.2d at 661-62 ("if there is a reasonable ground for contesting a claim, there is no bad faith in the denial of it."). In *Doe*, the South Carolina Supreme Court recognized several cases that appeared to hold that an insurer did not act in bad faith in settling claim within the monetary limits of the policy:

> courts [other than the district court of Florida] have reached similar conclusions where an insured has challenged an insurer's decision to settle a claim. *See generally Mitchum v. Hudgens*, 533 So.2d 194 (Ala. 1988) (insurer's exclusive right to settle claims against its insured imposes a duty raised by law to observe ordinary diligence in exercising that right; this duty does not compel the insurer to seek the insured's permission before settling a claim); *Frankel v. St. Paul Fire & Marine Ins. Co.*, 759 A.2d 869 (N.J. App. Div. 2000) (bad judgment on the part of the insurer does not constitute bad faith given the insurer's broad discretion in disposing of third party claims); *Cash v. State Farm Mut. Auto. Ins. Co.*, 528 S.E.2d 372 (N.C. 2000) (recognizing that an insurer, when settling claims with a third party, acts in its own self-interest); *Marginian v. Allstate Ins. Co.*, 481 N.E.2d 600 (Ohio 1985) (where a contract of insurance provides that the insurer may, as it deems appropriate, settle any claim or action brought against its insured, a cause of action alleging a breach of the insurer's duty of good faith will not lie where the insurer has

settled such claim within the monetary limits of the policy).

557, S.E.2d at 675. However, the South Carolina Supreme Court did not go so far as to reach the same conclusion. *Id.* Instead, the *Doe* court held that an insurer's decision to charge a portion of a malpractice settlement against one doctor's policy is subject to the covenant of good faith and fair dealing and that a party challenging such decisions must show bad faith on the part of the insurer. *Id.*

Liberty Mutual asserts that the following facts, as established in the record, demonstrate the reasonableness of its actions:

- The five underlying claims at issue were all transferred to Dan Langro, one of Liberty Mutual's senior adjustors for handling. Langro had extensive experience in the adjustment of construction defect cases, and was supervised on a recurring basis by Julien Savoie, who was responsible for construction defect claims nationally.

- Liberty Mutual assigned four of the five underlying cases to Finley Clarke ("Clarke") for Defense. The remaining case, Magnolia North, was assigned to Scott Taylor ("Taylor") and John Cutino. Combined, local defense counsel had over 45 years of experience in defending construction defect cases in South Carolina.

- MI Windows' independent defense counsel, Paul Gary ("Gary") was admitted pro hac vice in each case. Gary was extensively involved in defense preparations and his opinions were considered by local counsel in their evaluations of each case.

- Liberty Mutual did not spare any expense or otherwise restrict Clarke, Taylor and Gary in their defenses of MI Windows.

- Clarke and Taylor; Gary; Darlene Moffatt; and Don Langro convened for at least two global defense meetings and at least one mediation in each case to discuss the facts and merits of each action as they impacted the trial and settlement posture of each action.

- Liberty Mutual has produced over 1000 pages of claim notes, which document debate between Liberty Mutual, local defense counsel, Gary and other insurance adjusters regarding the merits of each case. Moreover, MI Windows had access to these notes through the "Ristrac" systems for the entire duration of each case.

Entry 97 at 18-19. Liberty Mutual further argues that the settlement contributions authorized by

Liberty Mutual in each of the underlying cases were generally less than 5% of the total settlement or verdict reached in each case.

However, in looking at the facts in a light most favorable to Defendants, the court finds that MI Windows has established a genuine issue of material fact as to whether Liberty Mutual acted in bad faith in settling the underlying state court actions. Gary's opinion that these settlements were not reasonable under the circumstances could, by itself, lead a reasonable jury to conclude that Liberty Mutual acted in bad faith in settling these cases. *See* Gary Dep. 38:16-39:7; 39:10-22; 52:17-53:2; 53:25-54:18; 58:6-25; 59:14-60:6; 62:10-19, May 27, 2009. Gary's opinion appears to be based upon his evaluation of the strength of MI Windows' defenses in each case, MI Windows' likelihood of success, and MI Windows' estimated range of potential exposure as outlined in his audit letters. *See* Entry 131. In addition, the expert report of Charles Miller ("Miller"), which states that Liberty Mutual "failed to comply with insurance industry standards and practices by placing its own interests above those of its insured" also supports a finding that there is a genuine issue of material fact to be resolved. Miller Report at ¶ 15. Miller's analysis of MI Windows' defenses in each of the underlying claims and conclusion that Liberty Mutual failed to properly evaluate MI Windows' defenses for the purpose of justifying the settlement of these actions further demonstrates that a genuine issue of material fact remains on the bad faith issue. *See* Miller Report at ¶¶ 24, 26, 27, 30, 31, and 32.

Liberty Mutual also argues that it is entitled to summary judgment with regard to MI Windows' bad faith claim because MI Windows cannot prove any damages caused by its alleged bad faith. A plaintiff must provide enough evidence such that a court or jury can determine the amount of damages with reasonable certainty or accuracy. *Whisenant v. James Island Corp.*, 281 S.E.2d 794,

15

796 (S.C. 1981). Mathematical certainty is not required. *Id.*

In this case, MI Windows has provided sufficient evidence of damages for its bad faith claim to continue. Specifically, MI Windows alleges that its damages with regard to Liberty Mutual's bad faith are equal to its deductible responsibilities for the underlying claims. Liberty Mutual indicated at the hearing that it felt it was owed a full $500,000 deductible per claim, which MI Windows disputes. This is sufficient to allow the court or jury to determine the amount of damages for MI Windows' bad faith claim with a reasonable degree of certainty.

2.      *Whether MI Windows' Bad Faith Claim is Barred by S.C. Code Ann. § 15-3-530*

Liberty Mutual argues that MI Windows' bad faith claim is barred by South Carolina's three-year statute of limitations because this claim first accrued in the fall of 2003 or early 2004 and MI Windows did not assert its bad faith claim until May 2009. Liberty Mutual contends that Liberty Mutual's denial of approval rights to MI Windows dates back to when MI Windows first became aware of Liberty Mutual's position that it had sole discretion to settle cases. The court disagrees

South Carolina has a three year statute of limitations for bad faith/breach of contract claims. S.C. Code Ann. § 15-3-530. A statute of limitations generally begins to run on the date a cause of action accrues, and a breach of contract action usually accrues at the time a contract is breached or broken. *State v. McClinton*, 631 S.E.2d 895, 898 (S.C. 2006). "The 'discovery rule' provides an exception to the general rule and tolls the statute of limitations until a person knows or by the exercise of reasonable diligence should know that he has a cause of action." *Barr v. City of Rock Hill*, 500 S.E.2d 157 (S.C. 1998).

The court concludes that MI Windows' bad faith cause of action accrued when it received notice that Liberty Mutual settled one of the underlying actions without MI Windows' consent. MI

16

Windows' bad faith counterclaim is not barred by the statute of limitations. Based upon all of the foregoing, the court denies Liberty Mutual's motion for summary judgment on MI Windows' counterclaim for bad faith.

E.                    <u>Liberty Mutual's Motion to Compel</u>

Liberty Mutual contends that the Gary Law Group's internal "opinion work product" must be produced because MI Windows has waived any such privilege by putting the Gary Law Group's analyses at issue in its bad faith claims. The court agrees.

The Fourth Circuit has recognized that "opinion work product 'enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.'" *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997). "Courts have articulated an exception to opinion work product immunity by allowing discovery of counsel's mental impressions when they are at issue and necessary to the litigation." *Leviton Mfg. Co., Inc. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 726 (D. Md. 2009). While the Fourth Circuit has not yet ruled on this specific issue, district courts in both Maryland and North Carolina have concluded that such an exception is not inconsistent with Fourth Circuit precedent. *Id.*; *Charlotte Motor Speedway, Inc. v. Int'l Ins. Co.*, 125 F.R.D. 127, 130-31 (M.D.N.C. 1989).

Because MI Windows represented at the hearing that it intended to rely upon Gary's opinions in proving its bad faith claim, putting these opinions at issue, Liberty Mutual is entitled to discovery of the Gary Law Group's internal opinion work product to the extent it is relevant to MI Window's bad faith claim or helped to form the basis for any of Gary's opinions on the reasonableness of the settlements in the underlying cases. Therefore, the court grants Liberty Mutual's motion to compel.

## **CONCLUSION**

For the reasons set forth above, the court hereby **grants** Liberty Mutual's motion for summary judgment (Entry 49); **holds in abeyance** a ruling on Defendants' motion for partial summary judgment (Entry 99); **denies** Liberty Mutual's third motion for summary judgment (Entry 97); and **grants** Liberty Mutual's motion to compel (Entry 96) to the extent that Defendants' counsel Paul Gary relied on the documents being sought in forming his opinion as to the reasonableness of settlement in the underlying cases. **The parties are ordered to submit questions on the allocation of deductibles issue to the court for certification to the South Carolina Supreme Court within fifteen (15) days of the issuance of this order.**

**IT IS SO ORDERED.**

                                            s/ Margaret B. Seymour
                                            The Honorable Margaret B. Seymour
                                            United States District Judge

March 30, 2010
Columbia, South Carolina