IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Liberty Mutual Fire Insurance Company and Employers Insurance of Wausau, a Mutual Company,<br><br>    Plaintiffs,<br><br>vs.<br><br>J.T. Walker Industries, Inc., f/k/a Metal Industries, Inc.; and MI Windows & Doors, Inc., f/k/a MI Home Products, Inc. and Metal Industries, Inc. of California,<br><br>    Defendants. | Civil Action No. 2:08-2043-MBS<br><br><br>**ORDER AND OPINION** |

  Plaintiffs Liberty Mutual Fire Insurance Company and Employer's Insurance of Wausau (collectively "Liberty Mutual") filed this action on May 29, 2008 against Defendants J.T. Walker Industries, Inc. ("J.T. Walker") and MI Windows & Doors, Inc. ("MI Windows") (collectively "Defendants") seeking a declaratory judgment of the rights and obligations of the parties under certain insurance policies issued to Defendants with respect to the defense and settlement of five underlying state court suits. On August 4, 2008, Defendants answered the complaint and MI Windows asserted a counterclaim for breach of contract against Liberty Mutual. On February 19, 2009, MI Windows amended its counterclaim against Liberty Mutual.

**BACKGROUND**

  On March 30, 2010, this Court issued an order resolving several outstanding motions. ECF No. 138. As relevant here, the Court granted Liberty Mutual's second motion for partial summary judgment, ECF No. 49, holding that MI Windows could not selectively tender its losses arising from progressive damage spanning multiple policies to a single Liberty Mutual policy, emphasizing that

"all of the policies triggered by a progressive damages claim provide coverage for that claim." ECF No. 138 at 9-10. The Court likewise held that Liberty Mutual had the right to compel contribution from other insurers that provided coverage for a portion of the progressive damage period. *Id.* at 11.

MI Windows also moved for partial summary judgment, requesting that the Court declare that its "deductible obligation . . . be proportionate to Liberty Mutual's financial responsibility for an occurrence." ECF No. 99-1 at 4. In other words, MI Windows sought a ruling that "if Liberty Mutual is permitted to allocate a [percentage] of litigation costs to [MI Windows' subsequent insurer] Zurich," Defendants are entitled to reduce their deductible by the same percentage. ECF No. 138 at 11. Alternatively, Defendants sought a declaration that "MI is not obligated to pay more than its single, $500,000 deductible for an occurrence." ECF No. 99-1 at 4. Finding that no South Carolina case addressed the effect, "if any, of allocation upon an insured's responsibility to pay deductibles," the Court certified a question to the South Carolina Supreme Court. ECF No. 138 at 12. The question certified to the state Supreme Court was:

> Under South Carolina law, when multiple commercial general liability policies are triggered pursuant to *Joe Harden Builders, Inc. v. Aetna Casualty & Surety Co.*, 486 S.E.2d 89 (S.C. 1997), and an insurer is able to allocate indemnity costs to another subsequent insurer, is the insurer entitled to prorate the various deductibles in proportion to the allocation of indemnity costs among the triggered policies?

ECF No. 144.

While the certified question was pending, the South Carolina Supreme Court issued an opinion in *Crossmann Communities of N.C., Inc. v. Harleysville Mutual Ins. Co.* ("*Crossmann II*"), _ S.E.2d _, 2011 WL 3667598 (S.C. 2011), overruling its earlier decision in *Century Indemnity Co. v. Golden Hills Builders, Inc.*, 561 S.E.2d 355 (S.C. 2002). The South Carolina Supreme Court answered the certified question on August 22, 2011. ECF No. 172. The Supreme Court observed

that "[i]t appears to us that the district court's order on partial summary judgment determined Liberty Mutual was required to indemnify MI in full," noting that this determination "appears to have rested on [the district court's] interpretation of the principles set forth in *Joe Harden* . . . and *Century Indemnity*." *Id.* at 5. Although acknowledging that its recent *Crossmann II* decision had "overruled *Century Indemnity* and clarified the analysis in *Joe Harden*," the Supreme Court "view[ed] the district court's grant of partial summary judgment as binding" and answered the certified question based on the premise that "MI was entitled to full indemnity from a single insurer." *Id.* at 2, 5. "Proceeding on that premise alone," the Supreme Court answered the certified question "no." *Id.* at 5.

In an August 29, 2011 status conference, this Court requested that the parties provide supplementary briefing explaining the effect of the *Crossmann II* decision and the answer to the certified question on the Court's March 30, 2010 order and Defendants' outstanding motion for partial summary judgment. Both parties submitted briefs on September 12, 2011.

## DISCUSSION

### A.   Clarification of the March 30, 2010 Order

Liberty Mutual argues that "the South Carolina Supreme Court misconstrued the ultimate holding of this Court's summary judgment order," explaining that while the Court held that the "Liberty Mutual policy in effect at the time of the injury-in-fact covers the full settlement of each underlying claim," the Court also held that "Liberty Mutual was entitled to allocate the loss among successive insurers, pro rata, based on the time on the risk." ECF No. 173 at 2. Liberty Mutual contends that "these two results are arguably inconsistent with one and other [sic]." *Id.* MI Windows similarly suggests that the South Carolina Supreme Court misunderstood this Court's

order, stating that "MI Windows construes [this Court's March 30, 2010] Order as being aligned with *Crossmann II* by providing for pro rata allocation based on time-on-the-risk and not . . . a full indemnification from Liberty Mutual." ECF No. 174 at 2.

Liberty Mutual is correct that the two holdings in this Court's March 30, 2010 order are "arguably inconsistent," although the inconsistency arises directly from the tension between *Joe Harden* and *Century Indemnity*. *Joe Harden* held that in a progressive damage case insurance "coverage is triggered at the time of an injury-in-fact and continuously thereafter to allow coverage *under all policies in effect from the time of injury-in-fact during the progressive damage*." 486 S.E.2d at 91 (emphasis added). This Court noted that "this theory of coverage will allow the allocation of risk among insurers when more than one insurance policy is in effect during the progressive damage." *Id.* Subsequently, *Century Indemnity* relied solely on *Joe Harden* to hold that "a standard commercial general liability insurance policy that explicitly provides coverage only for property damage occurring during the policy period" must "provide coverage for *continuing damage that begins during the policy period*." 561 S.E.2d at 563-64.

As the South Carolina Supreme Court recently explained in *Crossmann II*, "[t]his analysis [in *Century Indemnity*] fundamentally misinterpreted *Joe Harden* and is profoundly at odds with the insurance contract." 2011 WL 3667598 at *9. The Supreme Court explicitly repudiated the *Century Indemnity* theory that "would make a single policy responsible for full indemnity" of a claim based on progressive damage, instead reaffirming the holding of *Joe Harden* that "expressly contemplated that property damage would span multiple policy periods, triggering coverage under each policy." *Id.* at *9-10. The Supreme Court acknowledged that it had not previously determined "how much coverage would be provided by each triggered policy," and proceeded to adopt a pro rata theory

based on "time on the risk" that "obligat[es] the insurer to pay only those damages caused by property damage that occurs during the policy period." *Id.* at *10-11 (quotation omitted).

In light of the subsequent change in controlling state law, this Court now finds it appropriate to modify and clarify its March 30, 2010 order. The Court reaffirms its holding that every insurance policy in effect during the period of progressive damage is triggered, and that Liberty Mutual has a right to seek pro rata allocation of costs from other insurers based on the length of time each insurer covered the risk. However, the Court retracts its statement that "the Liberty Mutual policy in effect at the time of the injury-in-fact covers the full settlement of each claim" and instead holds that each policy covers only the losses arising from property damage occurring during the policy period.

**B.    Defendants' Right to Prorate Deductibles**

Because the South Carolina Supreme Court based its answer to the certified question on a prior state of the law that is no longer controlling in this case, the answer is not dispositive of the remaining issue for summary judgment. The question remains one of first impression, as there is still no South Carolina case addressing a policyholder's right to prorate deductible payments when a claim based on progressive damage spans multiple policy periods. However, by clarifying at length the scope of an insurer's liability for progressive damage that spans multiple policies, *Crossmann II* provides sufficient guidance for this Court to decide the issue.[1] After examining the specific language of Defendants' policies and surveying the law of South Carolina and other states, this Court concludes that Defendants are not entitled to prorate any deductibles, and must pay the full deductible for each policy triggered by the progressive damage.

---

[1]    The South Carolina Supreme Court "express[ed] no opinion regarding the effect of the *Crossmann* decision on the rights and obligations of the parties in this case, leaving such matters to the district court in the first instance." ECF No. 172 at 5 n.2

In this case, Defendants faced five lawsuits in state court alleging that their defective window products allowed water to leak into homes, causing progressive damage to the homes in five subdivisions over the course of several years.[2] Between May 1, 1997 and July 1, 2003, Defendants had in place six one-year commercial general liability ("CGL") insurance policies; the first three were issued by Wausau, and the latter three were issued by Wausau's successor, Liberty Mutual.[3] Under each of the policies, the insurer agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." *See, e.g.*, ECF No. 17-5 at 18. Each policy applies only to "property damage" that "is caused by an '*occurrence*' that takes place in the 'coverage territory'" and that "*occurs during the policy period*." *Id.* (emphasis added). An "occurrence" is defined as "an accident, including continuous or repeated

---

[2]
- Riverwalk at Arrowhead Country Club Property Owners' Association, Inc. v. MI Home Products, et al., CA No. 03-CP-26-7169, Horry County, South Carolina ("Riverwalk");
- Avian Forest Homeowners' Association v. MI Windows & Doors, Inc. et al., CA No. 02-CP-22-0687, Horry County, South Carolina ("Avian Forest");
- Marais Property Owners' Association v. MI Windows, et al. CA No. 05-CP-10-1140, Charleston County, South Carolina ("Marais");
- Magnolia North Homeowners Association v. MI Windows, et al., CA No. 05-CP-26-0044, Horry County, South Carolina ("Magnolia North"); and
- Tilghman Shores Homeowners' Association v. MI Windows, et al. CA No 03-CP-26-4021, Horry County, South Carolina (Tilghman Shores").

[3]
- Wausau Insurance Companies, Policy Number 4828-00-000217, Policy Period May 1, 1997 to May 1, 1998, issued to Metal Industries, Inc.
- Wausau Insurance Companies, Policy Number 4828-00-000217, Policy Period May 1, 1998 to May 1, 1999, issued to J.T. Walker Industries, Inc.
- Wausau Insurance Companies, Policy Number 4828-00-000217, Policy Period July 1, 1999 to July 1, 2000, issued to J.T. Walker Industries, Inc.
- Liberty Mutual Insurance Policy No. RG2-651-004245-030, Policy Period July 1, 2000 to July 1, 2001, issued to J.T. Walker Industries, Inc.
- Liberty Mutual Insurance Policy No. RG2-651-004246-031, Policy Period July 1, 2001 to July 1, 2002, issued to J.T. Walker Industries, Inc.
- Liberty Mutual Insurance Policy No. RG2-651-004246-032, Policy Period July 1, 2002 to July 1, 2003, issued to J.T. Walker Industries, Inc.

exposure to substantially the same general harmful conditions." *Id.* at 35. "Property damage" includes "loss of use of tangible property," whether caused by physical injury or some other "occurrence"; such loss of use is deemed to occur at the time of the physical injury or "occurrence" that caused it. *Id.* at 36. Additionally, the three Liberty Mutual policies state that property damage "arising out of continuous or repeated exposure to substantially the same general harmful conditions will be considered as the result of one and the same 'occurrence.'" ECF No. 17-8 at 8. This language is consistent with that of a standard GCL policy, and is substantially identical to the policy interpreted in *Crossmann II*.

"In construing terms in contracts, this Court must first look at the language of the contract to determine the intentions of the parties." *C.A.N. Enterprises, Inc. v. S.C. Health & Human Serv. Fin. Comm'n*, 373 S.E.2d 584, 586 (S.C. 1988). "When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used." *Id.* Much of the disagreement between the parties arises from their different understandings of the term "occurrence" as applied to progressive damage. Defendants argue that the entire progressive water damage giving rise to each lawsuit constitutes a single "occurrence" under the policies. *See* ECF No. 99-1 at 14. Defendants further contend that because under *Joe Harden* and *Crossmann II* Liberty Mutual is held liable for only the pro rata portion of the damage that occurred during its policy period, Liberty Mutual is liable for only part of an "occurrence." *Id.* at 14-15. Because the policy language does not address a situation where the insurer is only partially liable for an "occurrence" and is therefore ambiguous on this point, Defendants conclude that it would be inequitable to force a policyholder to pay a full per-occurrence deductible for indemnification of a partial occurrence. *Id.* Defendants' position, therefore, is that they should be required to pay only a single $500,000 deductible for the

resolution of a claim arising from progressive water damage spanning six or more policy periods.

Defendants' argument is supported by the policy language declaring that "property damage arising out of continuous or repeated exposure to substantially the same general harmful conditions" constitutes a single occurrence. However, the policy also states that only damage arising from an "occurrence" that "occurs during the policy period" is covered. Moreover, the South Carolina Supreme Court emphasized in *Crossmann II* that an insurer's liability is limited to "sums that are attributable to property damage that occurred during the policy period." 2011 WL 3667598 at *10. The South Carolina Supreme Court, in discussing its pro rata interpretation, recognized the importance of "giv[ing] effect to each part of the insuring agreement." *Id.* at *12. The only interpretation of "occurrence" able to reconcile all of the policy language in a manner consistent with *Crossmann II* is that all of the damage that happens in one policy year constitutes a single "occurrence," and therefore progressive environmental damage creates "a 'separate' occurrence in each policy year." *Benjamin Moore & Co. v. Aetna Casualty & Surety Co.*, 843 A.2d 1094, 1105 (N.J. 2004). Put another way, an "occurrence" is "the quantum of property damage occurring during a given policy period."[4] *Boston Gas Co. v. Century Indemnity Co.*, 910 N.E.2d 290, 307 (Mass. 2009).

Once it is established that progressive damage creates a series of occurrences rather than a single occurrence, Defendants' main justification for paying a reduced deductible disappears. Each policy provides indemnity of up to $1 million per "occurrence" for any losses arising from damage occurring *within that policy year*, after the policyholder has satisfied a $500,000 deductible. Any progressive damage that takes place within the policy year is an "occurrence" that triggers the policy,

---

[4] Although *Boston Gas* used this phrase to describe the damage for which an insurer is liable under a given policy, the Court did not define it as an "occurrence."

8

and the policy will fully indemnify any damage arising from this occurrence up to its limit. If losses arise, as in this case, from progressive damage spanning multiple policy years and therefore constituting multiple "occurrences," Defendants must pay a separate deductible for each separate occurrence. "[O]nce the amount of loss allocable to the policy period is determined, it is to be treated exactly as any actual loss during that period would be treated." *Benjamin Moore*, 843 A.2d at 1105. This allocation of progressive damage to multiple policy years is not an "equitable" remedy, as Defendants contend. *See* ECF No. 99-1 at 5. Each insurer is "being held responsible for the losses that actually occurred on [its] watch" in accordance with the clear policy language; "the insurers are not sharing a single loss." *Benjamin Moore*, 843 A.2d at 1105.

Defendants object that when the costs of a progressive damage-based claim are relatively low, they will be responsible for the entire loss because the combined deductibles are greater than the cost of the total claim. However, Defendants ignore the other side of the bargain – that when the costs of a progressive damage-based claim are *high*, they obtain the benefit of multiple policy limits rather than the much lower limit of a single occurrence. Defendants argue that the "Non-Cumulation of Limits" clause in their policies "purports to reduce [Liberty Mutual's] liability for a claim that triggers multiple policies to a single, per occurrence limit." ECF No. 64 at 16. The clause states that "if *one 'occurrence'* causes . . . 'property damage' during this policy period and during" a prior or future policy period also, "this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such 'occurrence.'" *See, e.g.*, ECF No. 64-3 at 24 (emphasis added). Accordingly, Defendants argue, "MI could be liable to pay $3 million to obtain $500,000 in coverage." *Id.* Contrary to Defendants' assertions, the "Non-Cumulation of Limits" clause is not relevant to a progressive damage claim that spans multiple

9

policy periods because the damage occurring in each policy period constitutes a separate occurrence.

Ultimately, there is no conceptual difference between a single deductible under a single policy and an aggregate deductible arising from multiple policies; in both cases the "deductibles . . . are directly related to [the] premiums" paid by the insured. *Benjamin Moore*, 843 A.2d at 1106. When a policyholder purchases a high-deductible policy, and thereby pays a lower premium, it is taking a chance that the liability it incurs due to property damage in the course of that policy year will be lower than its deductible and that there will therefore be no contribution from the insurer. On the other hand, it would be unjust, as well as contrary to the allocation of risk negotiated by the parties, to allow Defendants to pay only a single deductible under a claim where Liberty Mutual is potentially liable up to the limits of as many as six occurrences.[5]

The majority of courts to adopt a pro rata allocation method for liability based on progressive damage have agreed that an insurer is entitled to a full deductible for each triggered policy. *See* Scott M. Seaman & Jason R. Schulze, *Allocation of Losses in Complex Insurance Coverage Claims* § 4.3[c][2] (2d ed. 2010); *Benjamin Moore*, 843 A.2d at 1106-08. Defendants, however, urge this Court to allow proration of deductibles in accordance with *Boston Gas*, "a case heavily relied on by the South Carolina [Supreme Court] in *Crossmann II*." ECF No. 174 at 2. The Massachusetts Supreme Court in *Boston Gas* allowed this deductible reduction "because it produce[d] an equitable result in the face of policy language that is at best *ambiguous* as to what happens when the insurer is held liable for *only part of a continuous occurrence*." 910 N.E.2d at 316 (emphasis added, quotation omitted). The *Boston Gas* Court adopted a presumption that "unless the policy language unambiguously provides otherwise, the policyholder is liable for only a prorated portion of its per

---

[5] That is, Defendants could obtain $6 million in coverage from Liberty Mutual by paying only a single $500,000 deductible.

10

occurrence self-insured retention for each triggered policy period, to be prorated on the same basis as the insurer's liability" for continuous damage. *Id.*

Although the *Boston Gas* Court discussed at length its adoption of a pro rata allocation method based on "time on the risk," it did not explicitly adopt the "multiple occurrence" interpretation discussed above. Rather, it appears that the *Boston Gas* Court viewed an entire period of progressive damage as only a single "occurrence," even while holding that an insurer is only liable for the percentage of the "occurrence" that occurred during its policy period. As this Court has explained, the approach of *Benjamin Moore*, viewing progressive damage as a series of "occurrences," is more consistent with the pro rata allocation method adopted by the South Carolina Supreme Court in *Crossmann II*. Under this interpretation, there is no ambiguity in the policy language. As in *Boston Gas*, the policies do not address the policyholder's responsibilities when the insurer is held liable "for only part of a continuous occurrence," but this is irrelevant. The damage occurring within one policy year constitutes the "occurrence" under that policy, and the insurer is liable for all, not part, of this occurrence. In the absence of any ambiguity, the policies must be interpreted according to their clear language requiring a full deductible for each occurrence.

## **CONCLUSION**

For the reasons set forth above, the court hereby **modifies** its March 30, 2010 order (ECF No. 138 at 9-10) to hold that each Liberty Mutual policy in effect during the period of progressive damage covers only the damage that occurred during the policy period and not the full settlement of the claim. The Court also **denies** Defendants' motion for partial summary judgment (ECF No. 99) and holds that Defendants' obligation to pay deductibles is not modified by the allocation of losses among all insurers covering the progressive damage period.

**IT IS SO ORDERED.**

                                                s/ Margaret B. Seymour
                                                The Honorable Margaret B. Seymour
                                                United States District Judge

September 22, 2011
Columbia, South Carolina