IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Liberty Mutual Fire Insurance Company and Employers Insurance of Wausau, a Mutual Company, | ) ) ) ) | Civil Action No. 2:08-2043-MBS |
| Plaintiffs, | ) ) | **ORDER AND OPINION** |
| vs. | ) ) | |
| J.T. Walker Industries, Inc., f/k/a Metal Industries, Inc.; and MI Windows & Doors, Inc., f/k/a MI Home Products, Inc.; and Metal Industries, Inc. of California, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Liberty Mutual Fire Insurance Company and Employers Insurance of Wausau (collectively "Plaintiffs") filed this action on May 29, 2008, against J.T. Walker Industries, Inc. and MI Windows & Doors, Inc. (collectively "Defendants"), seeking a declaratory judgment of the rights and obligations of the parties under certain insurance policies issued to Defendants with respect to the defense and settlement of five underlying state court suits. On August 4, 2008, Defendants answered the complaint and asserted a counterclaim for breach of contract against Plaintiffs. On February 19, 2009, Defendants amended their counterclaim. On June 19, 2009, Plaintiffs filed an amended complaint, including a claim for breach of contract. Defendants filed an answer and counterclaim on June 24, 2009.

On March 30, 2010, this Court issued an opinion disposing of various outstanding motions and certifying a question to the South Carolina Supreme Court. The South Carolina Supreme Court answered the certified question in an August 22, 2011 opinion. On September 22, 2011, this Court issued an order modifying and clarifying its earlier March 30, 2010 order

based on a change in South Carolina law. The Court also denied Defendants' motion for partial summary judgment, holding that Defendants were not entitled to prorate any deductibles and that Defendants must pay a full deductible for each policy triggered by progressive water damage. These holdings were based in part on a finding that progressive water damage spanning multiple policy periods creates a separate "occurrence" under each policy.

This matter is now before the Court on Defendants' motion for reconsideration of the September 22, 2011 order. Defendants argue that Plaintiffs are judicially estopped from seeking to apply multiple deductibles based on Plaintiffs' sworn testimony, expert opinion, and representations to this Court. Defendants also argue that the multiple occurrence framework adopted by this Court is in conflict with *Owners Insurance Co. v. Salmonsen*, 622 S.E.2d 525 (S.C. 2005); *Crossmann Communities of N.C., Inc. v. Harleysville Mutual Ins. Co.* ("*Crossmann II*"), _ S.E.2d _, 2011 WL 3667598 (S.C. 2011); the South Carolina Supreme Court's answer to this Court's certified question, and the policy language at issue. For the reasons set forth below, the Court denies Defendants' motion for reconsideration.

## DISCUSSION

Defendants move for reconsideration under Federal Rule of Civil Procedure 54(b), which provides that "any order or other decision, however designated, that adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims." A district court "retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir.

2003).

The policies at issue in this case define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See, e.g.*, ECF No. 17-8 at 7. The South Carolina Supreme Court has defined an "accident" as "[a]n unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt." *Green v. United Ins. Co. of America*, 174 S.E.2d 400, 402 (S.C. 1970). The South Carolina Supreme Court has held that faulty workmanship or defective construction, in itself, does not satisfy the definition of "occurrence" and therefore does not trigger coverage under a standard occurrence-based general commercial liability ("CGL") policy. *See Crossmann II*, 2011 WL 3667598 at *3-4; *Auto Owners Ins. Co., Inc. v. Newman*, 684 S.E.2d 541, 543-44 (S.C. 2009).

In *Newman*, a case involving progressive water damage to homes caused by negligent application of stucco, the South Carolina Supreme Court held that "although the subcontractor's negligent application of the stucco does not on its own constitute an 'occurrence,' we find that the continuous moisture intrusion resulting from the subcontractor's negligence is an 'occurrence' as defined by the CGL policy." *Newman*, 684 S.E.2d at 544. The *Crossmann II* court, refining but not rejecting the *Newman* analysis, reached the same result without specifically defining "occurrence." Rather, the *Crossmann II* court stated that "it is only after 'property damage' has been alleged that the question of 'occurrence' is reached," and emphasized that "a more complete understanding of the coverage issue in this kind of progressive property damage case should involve the policy term 'property damage.'" *Crossmann II*, 2011 WL 3667598 at *3-4. The *Crossmann II* court held that although a defectively manufactured or

installed product does not itself constitute "property damage," any damage to other non-defective property that occurs because of the defective product would constitute "property damage" under the terms of the policy. *Id.* Finding progressive damage caused by repeated water intrusion to be "property damage," the *Crossmann II* court held that under the "expansive" and "ambiguous" definition of "occurrence," coverage was "triggered." *Id.* at *4.

Although the *Crossmann II* court did not explicitly define the "occurrence" in that case as "continuous moisture intrusion," as in *Newman*, this definition is strongly implied. Under the terms of the policy, "property damage" triggers coverage only if it is caused by an "occurrence." In light of the *Crossmann II* court's statement that it was "adher[ing] to [the] precedent in *Newman*," the installation of the defective product could not constitute an "occurrence." *See Crossmann II*, 2011 WL 3667598 at *4 n.6. Because an "occurrence" is required to trigger coverage and the installation of the defective damage-causing product is not an "occurrence," it would appear that the "occurrence" could be nothing other than the water intrusion itself. Similarly, the "occurrence" in the present case must be actual intrusion of water into homes through Defendants' defective windows rather than the manufacture or sale of such windows.

Given that water intrusion constitutes the "occurrence" in the present case, the next question is whether repeated water intrusion over the course of years constitutes a single "occurrence" or multiple "occurrences." Contrary to Defendants' assertion, the *Crossmann II* court did not "deci[de] to spread the loss caused by one occurrence across multiple triggered policies." ECF No. 190 at 12. The court did not discuss or decide whether progressive damage should be treated as a single occurrence or as multiple occurrences. The *Crossmann II* court held that a standard CGL policy covers only the "property damage" that occurs during the policy

period, and that progressive damage spanning multiple policy periods triggers every policy in effect during the progressive damage period. *See Crossmann II*, 2011 WL 3667598 at *5. The *Crossmann II* court reaffirmed the *Joe Harden* continuous trigger for progressive damages because, unlike other theories, it was "logically consistent with indemnity under multiple policies." *Id.* at *7; *see Joe Harden Builders, Inc. v. Aetna Casualty & Surety Co.*, 486 S.E.2d 89 (S.C. 1997). Notably, in the same discussion the *Crossmann II* court quoted the Minnesota Court of Appeals' statement "reject[ing] the argument that there can be only one occurrence in a case where property damage results from continuous or repeated conditions of exposure." *Id.* at *8 (quoting *Industrial Steel Container Co. v. Fireman's Fund Ins. Co.*, 399 N.W.2d 156, 159 (Minn. Ct. App. 1987)).

Defendants suggest that, although each policy covers only the "property damage" occurring during a single policy year, progressive damage spanning many years should be considered a single "occurrence." As explained above, the policies at issue cover "property damage" that is caused by an "occurrence." It is incongruous to maintain that property damage occurring in a single policy year can be "caused" by water intrusion occurring outside of the policy period, including water intrusion that will happen in the future. Rather, because "property damage" is broken into discrete, one-year blocks based on policy periods, the better approach is to divide the entire period of water intrusion into multiple "occurrences" to correspond with each one-year block of "property damage." The policy language stating that "'property damage' arising out of continuous or repeated exposure to substantially the same general harmful conditions will be considered as the result of one and the same 'occurrence'" serves to collapse all water intrusion occurring during a single policy period into a single "occurrence," but it

cannot stretch this "occurrence" beyond the temporal limits of the policy. ECF No. 17-8 at 8.

Defendants protest that this Court's adoption of a multiple occurrence framework leads to a "harsh result" in the present case, but fail to demonstrate that the rule itself is harsh or unjust. ECF No. 190 at 15. Simply put, Defendants are unhappy with the application of the rule in this case because their liability arising from progressive damage spanning multiple policy years is relatively small, such that Defendants are forced to cover the entire loss pursuant to the policy deductibles. However, if Defendants' liability were very large and far in excess of a single policy limit, Defendants would no doubt argue that it is "harsh" to allow an insurer to pay only a single policy limit for massive damage spanning multiple years and triggering multiple policies. In general, it would appear that shielding a policyholder from massive, potentially ruinous liability is the more just result, even if requires that the policyholder pay larger deductible amounts for relatively small claims.

Defendants rely on *Owners Insurance Co. v. Salmonsen*, 622 S.E.2d 525 (S.C. 2005), to argue that progressive damage spanning multiple policy periods constitutes a single "occurrence." In *Salmonsen*, the South Carolina Supreme Court considered whether, under a standard general commercial liability ("GCL") policy, an "occurrence" consists of "each individual sale of a defective product" or "the general act of distribution" of such products. *Id.* at 525. The *Salmonsen* court considered the majority "cause test," which "focuses on the cause of the damage rather than the number of claimants or injuries," as well as the minority view, which "focuses on the effect of the insured's action and considers each event or each injury a separate occurrence." *Id.* at 526. Ultimately, the *Salmonsen* court "decline[d] . . . to simply choose the majority or minority view and instead focus[ed] narrowly on the issue at hand." *Id.* Noting that

the policy at issue defined an "occurrence" to include "continuous and repeated exposure to substantially the same general harmful conditions," and that "the distributor ha[d] taken no distinct action giving rise to liability for each sale," the *Salmonsen* court held that in this "specific context . . . there [was] a single occurrence." *Id.*

The *Salmonsen* court considered whether multiple sales of the same defective product constituted a single occurrence, a question not at issue in the present case. The parties have not discussed, and this Court has not considered, whether the water damage caused by *each individual defective window* sold by Defendants constitutes a separate occurrence. Rather, the parties have assumed that each state court lawsuit brought by a homeowners' association based on numerous defective windows installed in that neighborhood constitutes a single claim or occurrence. This question in this case, which was not addressed in *Salmonsen*, concerns the definition of "occurrence" when property damage occurs progressively over multiple years and multiple policies.

Defendants urge this Court to adopt the broadest possible reading of *Salmonsen*, arguing that "the act giving rise to continuing damages . . . control[s] the number of occurrences." ECF No. 190 at 3. If the "general act of distribution" of defective products is a single occurrence, the ultimate logical implication is that all of the water damage ever caused by every defective window ever sold by Defendants constitutes only a single occurrence. This would compress all five state court lawsuits underlying the present case, as well as any other liability incurred by Defendants due to water damage, into a single occurrence. Such an interpretation cannot be maintained in light of subsequent developments in South Carolina law. As discussed above, this act-based definition of "occurrence" was rejected in *Newman* and *Crossmann II*, both of which

dealt specifically with progressive water damage. Although *Salmonsen* has not been explicitly overruled, the South Carolina Supreme Court's in-depth treatment of progressive water damage in subsequent opinions is controlling.

Defendants contend that the "Non-Cumulation of Limits (Same Occurrence)" clause contained in their GCL policies demonstrates that a single "occurrence" can result in property damage spanning multiple policies. ECF No. 190 at 7. The clause specifies Plaintiffs' obligations "[i]f one 'occurrence' causes . . . 'property damage' during this policy period and during the policy period of one or more prior and/or future policy(ies)." The plain language of this clause does, in fact, contemplate that some "occurrences" may cause "property damage" spanning multiple policies. However, the present case deals with one specific type of occurrence – progressive water damage caused by a defective product. Although there are other situations in which "[t]he occurrence is not defined to be the injury" but rather the *cause* of the injury, *Uniroyal, Inc. v. Home Insurance Co.*, 707 F. Supp 1368, 1380 (E.D.N.Y. 1988), South Carolina law clearly holds that when a defective product causes progressive damage to property, coverage is triggered by an "injury-in-fact" to the property rather than by an "accident" on the part of the insured that is the ultimate cause of the property damage. *See Crossmann II*, 2011 WL 3667598 at *7-8. In such a situation, it does not appear that a single occurrence could cause property damage spanning multiple policy periods.

Defendants also contend that the Known Injury or Damage Amendment, present in only the last of the six policies at issue in this case, "clearly states that the policy considers continuing damage flowing from the same harm and extending *beyond the policy* to be a single 'occurrence.'" ECF No. 190 at 8. The Amendment states that "'property damage' which occurs

8

during the policy period . . . includes any continuation, change or resumption of that . . . 'property damage' after the end of the policy period." ECF No. 17-10 at 45. Contrary to Defendants' assertion, this Amendment discusses only "property damage" and does not explicitly or implicitly define an "occurrence."[1]

Defendants further argue that the South Carolina Supreme Court's answer to this Court's certified question "augurs" the conclusion that deductibles should be prorated. ECF No. 190 at 13. As discussed in this Court's September 22, 2011 order, the South Carolina Supreme Court answered the certified question based entirely on this Court's prior holding that Liberty Mutual was required to indemnify Defendants under a single policy for losses arising from progressive damage over the course of several years. As the South Carolina Supreme Court noted, this holding was no longer good law after *Crossmann II*. This Court modified its prior order to reflect the current state of the law, rendering the answer to the certified question moot. Accordingly, this Court notes that the answer does not dispose of the question at hand, and declines to speculate as to the South Carolina Supreme Court's intentions.

Defendants finally argue that Liberty Mutual is judicially estopped from applying multiple deductibles to a single claim based on its prior representations to this Court and other testimony. In its September 22, 2011 order, this Court held that "Defendants are not entitled to prorate any deductibles, and must pay the full deductible for each policy triggered by the

---

[1] The Court further notes that the Amendment, which purports to compress "property damage" occurring in multiple policy periods into a single policy, appears to be at odds with *Crossmann II*'s holding that a policy covers only "property damage" that actually occurs within the policy period. Because this clause has not been previously discussed by the parties and has no bearing on the remaining issues in this case, this Court will not attempt to interpret it further or reconcile it with *Crossmann II*.

progressive damage." ECF No. 180 at 5-6. Plaintiffs note that they "ha[ve] not taken the position factually or legally that the Defendants are required to pay more than a single deductible." ECF No. 197 at 4. In Plaintiffs' amended complaint, Plaintiffs sought a declaratory ruling determining "[w]hether [Defendants] are entitled to a pro-rata reduction of their deductible payment or reimbursement obligation under any policy," as well as "a determination of any other rights and obligations of the parties under the applicable policies of insurance as may arise during discovery and litigation." ECF No. 78 at 10. This Court's holding that Defendants are not entitled to prorate deductibles was based on a finding that the portion of progressive damage occurring during each policy period constitutes a separate occurrence, and the same finding necessarily implies that a policyholder is liable for a full deductible for each policy triggered. However, Plaintiffs have consistently represented, including in their most recent filing with this Court, that they seek to recover only one deductible per underlying claim. *See* ECF No. 197 at 3-4; ECF No. 138 at 9 n.7. Accordingly, the legal conclusion stated in this Court's September 22, 2011 order should not be interpreted to override Plaintiffs' concession that only one deductible per claim is sought.

## CONCLUSION

For the reasons set forth above, the Defendants' motion for reconsideration is denied.

**IT IS SO ORDERED.**

                                          s/ Margaret B. Seymour
                                          The Honorable Margaret B. Seymour
                                          United States District Judge

December 8, 2011
Columbia, South Carolina