IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Liberty Mutual Fire Insurance Company and Employers Insurance of Wausau, | ) ) ) ) | Civil Action No.  2:08-2043-MBS |
| Plaintiffs, | ) ) | **ORDER AND OPINION** |
| vs. | ) ) ) | |
| J.T. Walker Industries, Inc., f/k/a Metal Industries, Inc.; and MI Windows & Doors, Inc., f/k/a MI Home Products, Inc.; and Metal Industries, Inc. of California, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| MI Windows & Doors, Inc., | ) ) | |
| Counter-Claimant, | ) ) | |
| vs. | ) ) ) | |
| Liberty Mutual Fire Insurance Company and Employers Insurance of Wausau, | ) ) ) ) | |
| Counter-Defendants. | ) ) ) | |

On June 19, 2009, Liberty Mutual Fire Insurance Company and Employers Insurance of

Wausau (collectively "Liberty Mutual") filed an amended complaint against J.T. Walker

Industries, Inc., and MI Windows & Doors, Inc. (collectively "MI Windows").  Liberty Mutual

sought a declaratory judgment construing six commercial general liability ("CGL") insurance

policies issued to MI Windows, covering a period between 1997 and 2003.  Liberty Mutual also

alleged that MI Windows had breached these contracts by failing to pay amounts due under the

policies.  MI Windows filed a counterclaim seeking a declaratory judgment as to various

provisions of the insurance policies.  MI Windows also filed counterclaims for breach of contract and bad faith, alleging that Liberty Mutual had breached its contractual duty to defend and had failed to provide a defense in good faith.

The dispute centers around five lawsuits filed against MI Windows in South Carolina state court alleging that windows manufactured by MI Windows were defective.  In each suit, a homeowners' association and individual homeowners alleged that windows manufactured by MI Windows had leaked and allowed water to penetrate over time.  These suits are referred to herein by the names of the homeowners' association plaintiffs: *Avian Forest*, *Tilghman Shores*, *Riverwalk*, *Magnolia North*, and *Marais*.  Because some of the alleged water damage occurred during the periods covered by the policies at issue in this case, MI Windows tendered the cases to Liberty Mutual for defense.  Liberty Mutual defended each case under a reservation of rights and eventually settled each case over MI Windows' objection.  Each policy contained a $500,000 deductible, requiring MI Windows to reimburse Liberty Mutual for the first $500,000 per occurrence spent on defense and indemnity costs.  However, MI Windows refused to reimburse Liberty Mutual for these five settlements and for various associated defense and claim handling fees.

On March 30, 2010, and September 22, 2011, the court issued orders construing various provisions of the insurance policies at issue in this case.  ECF No. 138 & 180.  The court held that the plain language of the policies gave Liberty Mutual the right to settle cases at its sole discretion without the consent or approval of MI Windows.  However, the court denied Liberty Mutual's motion for summary judgment on MI Windows' bad faith claim, holding that Liberty Mutual could be liable for bad faith if the settlements were unreasonable under the

circumstances. The court also held that each policy covers loss from only the portion of progressive water damage that occurred during the policy period, and that damage spanning multiple policies may be allocated to multiple policies and/or insurers.

The jury trial of Liberty Mutual's breach of contract claim and MI Windows' counterclaims for breach of contract and bad faith began on January 26, 2012. On February 3, 2012, the jury returned a verdict. The jury found MI Windows liable for breach of contract and awarded $894,416.01 to Liberty Mutual. The jury also found Liberty Mutual liable for breach of contract and awarded $18,290 to MI Windows. Finally, the jury found Liberty Mutual liable for bad faith and awarded $684,416.01 to MI Windows. The jury found by clear and convincing evidence that MI Windows was entitled to punitive damages. After further argument by the parties, the jury returned to deliberate. The jury awarded punitive damages to MI Windows in the amount of $12,500,000.00.

Now before the court are Liberty Mutual's motions for judgment as a matter of law, for a new trial, for a new trial conditioned on remittitur, and to reduce the punitive damages award on constitutional grounds. ECF No. 291, 292 & 293. MI Windows has moved for judgment as a matter of law or amendment of the judgment to correct manifest error. ECF No. 297. Liberty Mutual has also moved for an award of pre-judgment interest pursuant to S.C. Code § 34-21-20 and an award of taxable costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure. ECF No. 282 & 283. Finally, MI Windows has moved for an award of costs and attorney fees on various grounds. ECF No. 304 & 305.

3

## DISCUSSION

**I.      Liberty Mutual's Motion for New Trial Based on Improper Jury Instructions**

**A.      Jury Instructions**

Liberty Mutual argues that it is entitled to a new trial on MI Windows's bad faith claim

because the jury was improperly given an instruction based on *Tyger River Pine Co. v. Maryland*

*Casualty Co.*, 170 S.E. 346 (S.C. 1933).  The court gave the jury the following instruction:

> If an insurer assumes the defense of its policyholder in a liability case where the
> policyholder may potentially be exposed to liability above and beyond the policy
> limits, the insurer has the duty to settle the case if it is the reasonable thing to do.
> Also, if the interests of the insurer conflict with the interests of the policyholder
> during the insurer's defense of the claim brought against the policyholder, the
> insurer must sacrifice its own interests in favor of those of the policyholder.

ECF No. 276 at 13-14.  Liberty Mutual argues that this requirement for an insurer to sacrifice its

own interests applies only when the policyholder "may potentially be exposed to liability above

and beyond the policy limits," as in *Tyger River*, and is completely inapplicable when an insurer

decides to settle a case for an amount less than the policyholder's deductible.  The court is not

persuaded.

The fundamental flaw in Liberty Mutual's arguments is a failure to distinguish a

policyholder's "interests" from its "demands" or "desires."  *See* ECF No. 291 at 3 & 6.  The cases

cited by Liberty Mutual show that an insurer, rather than having "an unqualified duty to abandon

its interests and accede to the demand of an insured to settle within [policy] limits," need only act

reasonably in deciding whether to settle a case.  This premise was never in dispute.  The jury

instructions as a whole unambiguously state that Liberty Mutual had the contractual right to

control settlement decisions and could be liable for bad faith only if it exercised this right

unreasonably.  However, although the terms of the insurance contract allowed Liberty Mutual to

substitute its *judgment* for that of MI Windows in making settlement decisions, the contract did not permit Liberty Mutual to put its *interests* above those of MI Windows. The distinction may sometimes be subtle, but it is a distinction that exists under South Carolina law. If Liberty Mutual reasonably believed that it was in MI Windows' best interest to settle a lawsuit for an amount within the deductible, there was no bad faith regardless of whether MI Windows agreed with the decision. However, if Liberty Mutual's decision was made to further its own interests at the expense of MI Windows' interests, there was bad faith.

In *Tyger River*, the insurer refused a reasonable settlement offer that was near the policy limit. As the South Carolina Supreme Court recognized in that case, an insurer acting only in its own interests would have no incentive to settle a case for an amount near the policy limit. Because any amount greater than the policy limit would be paid by the policyholder, the insurer does not stand to lose any more from a large verdict at trial than it would for the settlement, and there is always a chance that it could win at trial. However, because the insurer's actions potentially expose the policyholder to significant losses that could be avoided, the insurer must sacrifice its own interests by accepting the reasonable settlement offer.

Rather than addressing harm caused by exposing an insured to liability above and beyond available coverage, as was the case in *Tyger River*, this case deals with alleged harm caused by settlement below the threshold for insurance coverage. Nevertheless, it is not difficult to see why a duty of good faith is also needed when an insurer decides to settle for an amount within the policyholder's deductible. In this case, because of the $500,000 deductible, Liberty Mutual had the power to spend up to $500,000 of MI Windows' money in defending and settling a case. If Liberty Mutual were to put its own interests ahead of those of MI Windows, it would have the

5

incentive to promptly settle any case that could possibly be settled for less than $500,000 –
regardless of whether the case were frivolous or the settlement demand excessive – in order to
avoid even the smallest chance that a verdict at trial might reach the layer of insurance coverage.

An insurer defending a policyholder has a duty to protect the interests of the policyholder,
and the insurer could potentially breach this duty by unreasonably settling a case or by
unreasonably refusing to settle.  Because the *Tyger River* charge was a correct statement of law
that was applicable to the facts of this case, there is no reason to order a new trial on this ground.

## II.      Liberty Mutual's Motion for JNOV

"If a party has been fully heard on an issue during a jury trial and the court finds that a
reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that
issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment
as a matter of law against the party on a claim or defense" that depends on that issue.  Fed. R.
Civ. P. 50(a)(1).  Such a motion may be made at any time before the case is submitted to the jury.
Fed. R. Civ. P. 50(a)(2).  If the court does not grant a party's Rule 50(a) motion, the party may
file a renewed motion for judgment as a matter of law after the jury returns a verdict.  Fed. R.
Civ. P. 50(b).  In ruling on a renewed motion, the court may allow judgment on the jury's verdict,
order a new trial, or direct the entry of judgment as a matter of law.  *Id.*

### A.      Contract Damages

Liberty Mutual moves for judgment as a matter of law on MI Windows' breach of
contract claim.  Liberty Mutual argues that there is no basis in the evidence for the contract
damages awarded to MI Windows.  MI Windows' response to Liberty Mutual's motion does not
address this argument.  MI Windows argued at trial that Liberty Mutual breached the contracts

by, among other things, charging excessive claim fees.  *See* ECF No. 260 at 22.  Liberty Mutual contends that these fees were justified by the insurance contracts.

Under the Wausau policies, MI Windows agreed to reimburse Wausau for "unallocated loss adjustment expenses . . . on a fee per claim basis as follows: $625 for the first six hours, or any portion thereof, plus time and expense for any time over six hours."  ECF No. 17-6 at 58; ECF No. 17-7 at 60; ECF No. 17-8 at 62.  Under the 2000-01 and 2001-02 Liberty Mutual polices, MI Windows agreed to reimburse Liberty Mutual for "claim handling expenses" at a rate of $625 per claim.  ECF No. 17-9 at 32; ECF No. 17-10 at 30.  Finally, under the 2002-03 Liberty Mutual policy, MI Windows agreed to reimburse Liberty Mutual for "claim handling expenses" at a rate of $967 per claim for general liability products claims.  ECF No. 17-11 at 31.

At trial, Darlene Moffatt, MI Windows' corporate representative, testified that Liberty Mutual opened four claim files for *Riverwalk*: one under the 1997-98 Wausau policy and one under each of the three Liberty Mutual policies.  ECF No. 256 at 103-04.  She testified that Liberty Mutual opened six claim files for *Magnolia North*: two under the 1998-99 Wausau policy, one under the 1999-2000 Wausau policy, and one under each of the three Liberty Mutual policies.  *Id.* at 104.  She testified that Liberty Mutual opened five claim files for *Tilghman Shores*: one each under the 1998-99 and 1999-2000 Wausau policies and one under each of three Liberty Mutual policies.  *Id.* at 104-05.  She testified that Liberty Mutual opened seven claim files for *Avian Forest*: one under the 1998-99 Wausau policy and two under each of the three Liberty Mutual policies.  *Id.* at 105.  Finally, she testified that Liberty Mutual opened four claim files for *Marais*: one under the 1999-2000 Wausau policy and one under each of the three Liberty Mutual policies.  *Id.* at 106.

7

MI Windows argued at trial that Liberty Mutual should have opened only one claim file for each of the five underlying cases rather than the twenty-six claim files that were actually opened. Donald Langro, a Liberty Mutual employee, testified that Liberty Mutual's practice was to open a separate file for each policy year triggered by a lawsuit based on progressive damage. *See* ECF No. 249 at 68. Michael Schaaf, another Liberty Mutual employee, testified that a single occurrence may give rise to multiple claims. *See* ECF No. 244 at 90-91. Finally, various witnesses testified that each of the five underlying "cases" actually involved two lawsuits – one brought by a homeowners' association and one brought as a putative class action of individual homeowners. *See* ECF No. 247 at 17, 25, 73-74, 89-90 & 155; ECF No. 249 at 202. Ms. Moffatt testified that the cost of the twenty-one allegedly inappropriate claim files was approximately $18,000. ECF No. 256 at 124. The jury awarded MI Windows $18,290 on its breach of contract claim. ECF No. 278.

"Insurance policies are subject to the general rules of contract construction." *B.L.G. Enterprises, Inc. v. First Financial Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). The court "must give policy language its plain, ordinary, and popular meaning." *Id.* "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *Id.* However, a policy "which [is] in any respect ambiguous or capable of two meanings must be construed in favor of the insured." *Reynolds v. Wabash Life Ins. Co.*, 161 S.E.2d 168, 169 (S.C. 1968).

The insurance policies neither define the term "claim" nor address whether additional claim files may be opened when a claim triggers coverage under multiple policies. Both in legal usage and ordinary usage, the term "claim" is susceptible of more than one meaning. *See Int'l*

*Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005). Although Liberty Mutual correctly states that a loss caused by progressive damage triggers every policy in effect during the period of progressive damage, this in itself does not establish that each triggered policy constitutes a separate "claim." This is certainly a reasonable interpretation, but it is not the only reasonable interpretation. A "claim" could also reasonably be defined as a demand made against MI Windows, including a lawsuit. Under this definition, a single lawsuit would give rise to only one "claim" regardless of the number of policies triggered. The court finds that the contracts are ambiguous on this issue, and that the jury could have reasonably construed them in favor of MI Windows. Furthermore, the evidence introduced at trial supports the jury's award of breach of contract damages to a reasonable degree of certainty. Liberty Mutual's motion for judgment as a matter of law is therefore denied.

### B.    Bad Faith

The court is not aware of any South Carolina case where an insurer has been held liable for bad faith in settling a policyholder's case for an amount within policy limits. Under *Tyger River*, an insurer may be liable to its policyholder for any harm caused by the insurer's refusal to accept a reasonable settlement offer. *See Tyger River*, 170 S.E. at 348-49. As explained above, the rationale of *Tyger River* implies that an insurer may also be liable to its policyholder for any harm caused by the insurer's acceptance of an unreasonable settlement offer. Accordingly, MI Windows had the burden to show at trial that Liberty Mutual's settlements were objectively unreasonable, and that it was harmed by these settlements.

### i.    Liability

Liberty Mutual moves for judgment as a matter of law on MI Windows' bad faith claim.

Liberty Mutual first argues that the jury's verdict on MI Windows' bad faith claim conflicts with the court's previous holding that Liberty Mutual had the right to settle lawsuits against MI Windows at its discretion.  Essentially, Liberty Mutual argues that if the insurance contract explicitly gives it the right to settle lawsuits over MI Windows' objection, a decision to settle over MI Windows' objection cannot constitute bad faith.  Although Liberty Mutual is correct that settling over MI Windows' objection does not in itself constitute bad faith, this does not support judgment as a matter of law.  In the same order holding that Liberty Mutual had the right to control settlement decisions, this court also held that Liberty Mutual could be liable for bad faith if there was no reasonable basis to support its settlement decisions.  *See* ECF No. 138 at 12-16. As the court has repeatedly made clear, the focus is on the objective reasonableness of the settlements.

Although MI Windows puts forth numerous ways in which Liberty Mutual allegedly acted in bad faith, most of these fail as a matter of law.  MI Windows goes to great lengths to emphasize the subjective bad faith of many Liberty Mutual employees involved in the claims process, but Liberty Mutual is not liable for bad faith unless these subjective considerations actually resulted in objectively unreasonable settlements.  Furthermore, MI Windows' expansive understanding of "reasonableness" would shift the focus away from the reasonableness of the settlement amounts and render Liberty Mutual's contractual right of control a nullity.  MI Windows argued before trial that the covenant of good faith and fair dealing requires Liberty Mutual to defer to the settlement wishes of MI Windows when settling for an amount within MI Windows' deductible.  ECF No. 229 at 5-6.  MI Windows continues to argue that because Liberty Mutual retained less risk than MI Windows, Liberty Mutual should defer to MI Windows's

10

wishes "absent a truly reasonable basis to not consider and accede to those wishes."  ECF No. 319 at 4.

Under MI Windows' theory, the reasonableness of an insurer's settlement decision would be determined by some complex weighing of the deference given to the policyholder's wishes and the relative risks borne by each party.  However, the insurance policies in this case sidestep the difficulties involved in such an undertaking by explicitly granting Liberty Mutual the right to settle any claim or suit "at [its] discretion."  MI Windows' argument that Liberty Mutual "should" have deferred to its wishes when settling for amounts less than $500,000 would write a major exception into a contractual provision that is perfectly clear.  South Carolina bad faith law does not permit such a result.  Rather, if Liberty Mutual settled the underlying cases for amounts that are objectively reasonable in light of the facts of those cases, it is irrelevant whether the settlement amounts are above or below MI Windows' deductible or whether MI Windows agreed with the decisions.

MI Windows also argues that Liberty Mutual acted in bad faith by failing to consider the amount of MI Windows' deductible in making settlement decisions.  MI Windows' expert witness, Charles Miller, testified that it was "startling" that MI Windows "ha[d] $500,000 at stake here and it wasn't even considered in the settlement of these cases."  ECF No. 252 at 124.  Once again the implication is that Liberty Mutual should have "considered" this fact by deferring to MI Windows' settlement wishes.  For example, Charles Miller, speaking about the considerations underlying Liberty Mutual' settlement decisions, stated that "another concern was that . . . these cases are going to cost a lot of money to defend.  But this is MI Windows' money to defend, not Liberty Mutual's.  If MI Windows wants to spend its own money to defend the

products, it seems to me that's up to MI Windows.  And Liberty Mutual is not in a position to say, well, we have to settle these cases because it's going to cost MI Windows too much money to defend them."  *Id.* at 143.

Mr. Miller's argument is an inaccurate characterization of the duty of good faith in light of Liberty Mutual's contractual right of control.  By permitting Liberty Mutual to settle cases at its discretion, the insurance policies did in fact put Liberty Mutual in the position to settle cases based on its own judgment that "it's going to cost MI Windows too much money to defend them."  As explained above, Liberty Mutual is bound to protect MI Windows' interests – not to accede to its demands or desires.  If in fact Liberty Mutual treated costs to be borne by MI Windows as if they were going to be paid by Liberty Mutual, this is evidence of good faith rather than of bad faith.

MI Windows argues that Liberty Mutual acted in bad faith by failing to consider possible damage to MI Windows' reputation when making settlement decisions.  MI Windows stated at trial that it "put great importance in protecting its reputation and its products," and that it refused to settle "frivolous" or "baseless" lawsuits involving its products.  ECF No. 244 at 24-25 & 44. Relatedly, MI Windows argues that Liberty Mutual acted in bad faith by settling cases in which there was no evidence of any product defect.  *See, e.g.*, ECF No. 319 at 13 (the underlying cases "were not only defensible, but . . . needed to be resisted because MI had done nothing wrong."). However, in each of the underlying cases, the plaintiffs put forth sufficient evidence such that MI Windows was unable to resolve the cases by motion without a trial.

MI Windows would read the insurance contract to say that Liberty Mutual may settle cases at its discretion "provided that sufficiently convincing evidence of a product defect exists."

12

This is simply not the agreement into which the parties entered. A manufacturer could reasonably decide to settle a weak lawsuit for a small amount of money if it appears that it would be more expensive to go to trial, particularly if there is even a minimal chance that a large verdict could result. A settlement for more than the cost of defense may also be reasonable depending on counsel's evaluation of the chances of success and the potential liability. On the other hand, it may also be reasonable to incur the expense and risk at trial in order to defend business reputation and deter future lawsuits. Although MI Windows states its strong preference for the latter course of action, this preference is not embodied in the insurance contract. Rather, by allowing Liberty Mutual to settle cases at its discretion, the contract allows Liberty Mutual to use its own judgment in choosing between multiple reasonable options. Furthermore, although MI Windows contends that its long-term interests are damaged by settling cases without evidence of product defects, it clearly furthers *some* interest of MI Windows to resolve lawsuits against it for around the expected cost of defense and thereby eliminate any possibility of a large trial verdict. Accordingly, unless Liberty Mutual chose to settle for amounts that were unreasonably high, Liberty Mutual's actions cannot constitute bad faith.

Liberty Mutual argues that "[e]ven if [it] had an extra-contractual duty to exercise [its] settlement discretion in good faith, [it] clearly did so in settling each of the underlying cases." ECF No. 292 at 12. Both parties introduced abundant evidence at trial addressing the reasonableness of Liberty Mutual's five settlement decisions. Liberty Mutual's evidence explained the possibility that MI Windows could face enormous liability due to joint and several liability and suggested that the cases could not be won on pretrial motions. Liberty Mutual's evidence showed that it relied on the advice of experienced counsel who found the settlements to

be wise given the cost and uncertainty of a jury trial. On the other hand, MI Windows introduced evidence showing that the cases against it were very weak, that its products were not defective, and that it could have potentially avoided joint and several liability. MI Windows also presented evidence that Liberty Mutual's reserves for each case, which allegedly reflect Liberty Mutual's valuation of a case, were lower than the amounts for which Liberty Mutual settled. Furthermore, MI Windows presented evidence suggesting that Liberty Mutual believed their retained counsel was irrationally biased toward settlement and unprepared to go to trial.

The reasonableness of Liberty Mutual's settlement decisions is a question of fact for the jury. Although Liberty Mutual certaintly "introduced evidence of numerous reasonable bases" supporting its decisions, ECF No. 291 at 8, the jury was not required to accept this evidence at face value. The court finds that the evidence introduced at trial, viewed in the light most favorable to MI Windows, could lead a reasonable jury to conclude that Liberty Mutual settled one or more of the underlying cases for an unreasonably large amount.

### ii.     Actual and Consequential Damages

Liberty Mutual finally argues that "even assuming . . . that [Liberty Mutual] acted in bad faith in settling the underlying actions, MI Windows cannot demonstrate that it was injured as a result of those actions unless it can prove that the defense costs and damages it would have paid in taking the cases through trial would have been less than the settlement amounts to which [Liberty Mutual] agreed." ECF No. 292 at 23.[1] The damages awarded by the jury for bad faith

---

[1]     MI Windows argues that Liberty Mutual has waived this argument by failing to present it in its motion for directed verdict at trial. Although Liberty Mutual did not present the argument in detail, it argued that MI Windows had not "incurred any damage that was caused by the action of [Liberty Mutual]" or satisfied the "causative element required under the *Tadlock* decision." ECF No. 260 at 17-18. The court finds this

comprise the entire sum awarded to Liberty Mutual for breach of contract minus $210,000 – the amount that Liberty Mutual contributed to the *Marais* settlement. That is, the jury awarded MI Windows damages based on the amount it owed Liberty Mutual for the *Avian Forest*, *Tilghman Shores*, *Magnolia North*, and *Riverwalk* settlements; the disputed defense costs; and the disputed claim handling fees. MI Windows also argues that its costs and attorney fees, which have not yet been proven, are recoverable as consequential damages of bad faith. The court will consider each category of damages separately.

### a.     Settlements

As explained above, a case involving a bad faith settlement is analogous to the bad faith refusal to settle described in *Tyger River* – in both cases, unreasonable, self-interested actions on the part of the insurer may cause the policyholder to incur greater expense than it otherwise would. However, further comparison with *Tyger River* reveals an additional difficulty regarding damages in the case of a bad faith settlement. In *Tyger River*, the insurer unreasonably refused a settlement for less than the policy limits. As a result, the case went to trial and resulted in a verdict that exceeded the policy limits. In this situation, the measure of damages is clear and definite; any amount over policy limits the policyholder is forced to pay is proximately caused by the insurer's bad faith in refusing a lower settlement. But in a situation where the bad faith consists of settling for an unreasonable amount, it is not generally obvious what would have happened if the insurer had not settled. Without knowing what it would have cost to resolve the case absent the bad faith settlement, there is no way to determine the consequential damages flowing from the insurer's bad faith.

---

sufficient to preserve the issue for the renewed motion for judgment as a matter of law.

MI Windows argues that the entire amount of defense and settlement costs spent by Liberty Mutual to settle cases in bad faith (and then billed to MI Windows) is recoverable as damages. MI Windows further argues that it satisfied its burden to prove damages "by presenting evidence that [Liberty Mutual] spent MI's money to settle product defect claims when there were no defects." ECF No. 319 at 23. MI Windows essentially contends that the settlements did not benefit the company in any way. *See id.* at 23-24 ("And, while true that the money spent funding Liberty's bad faith settlements would ultimately have been spent by MI elsewhere . . . , these would have been things that had value to MI."). The court disagrees. The settlements had the value of resolving cases against MI Windows in which it was facing millions of dollars in potential liability. If Liberty Mutual had not settled the cases, it would have had to resolve them in some other way. Even if there were no product defects, MI Windows would have very likely had to spend significant amounts of money at trial to prove that there were no defects. Unless the plaintiffs in each underlying case summarily dismissed all claims against MI Windows, MI Windows would have had to defend the cases; defense costs could have approached or even exceeded the settlement amounts. Furthermore, if MI Windows lost one or more of the cases, which is at least possible, it could have faced far greater liability.

The evidence introduced at trial does not permit a jury to determine with reasonable certainty the likelihood that MI Windows would have won its cases at trial or the amount of money that would have been required for a successful defense. Furthermore, although Paul Gary, an attorney who frequently represents MI Windows, testified that he had seen plaintiffs "walk away from [such] claims," ECF No. 256 at 33, the evidence does not establish any reasonable likelihood that the plaintiffs in the five underlying cases would have summarily dismissed their

claims against MI Windows.  Finally, MI Windows did not introduce evidence showing that any

of the cases could have successfully been settled for a lower amount.

MI Windows argues that requiring such proof "misstates MI's burden and operative law."

ECF No. 319 at 23.  MI Windows cites no examples of this "operative law," and it is unclear to

what it is referring.  As Liberty Mutual points out, no South Carolina court has previously found

an insurer liable for bad faith where the insurer had the contractual right to control settlement

decisions and settled within policy limits.  *See* ECF No. 336 at 4.  Such a claim exists only by

analogy to other forms of bad faith that have been recognized by South Carolina law.  These

other forms of bad faith require a showing of some definite loss that would not have occurred had

the insurer acted in good faith.  *See, e.g.*, *Nichols v. State Farm Mut. Auto Ins. Co.*, 306 S.E.2d

616, 618 (S.C. 1983) (insurer's bad faith refusal to pay benefits delayed the policyholder from

repairing his car for over seven months); *Tadlock Painting Co. v. Maryland Cas. Co.*, 473 S.E.2d

52, 53 (S.C. 1996) (insurer's bad faith refusal to pay benefits caused the policyholder to lose a

customer because the policyholder was unable to repair damage it had previously caused to the

customer).  Beyond South Carolina, courts have consistently recognized that in a claim for bad

faith damages based on an insurer's failure to make a reasonable settlement, causation cannot be

shown without some consideration of what would have happened if the insurer had not acted in

bad faith.[2]

---

[2]      See, for example, 3-23 *New Appleman on Insurance Law Library Edition* §
23.02[7]] ("Once it has been established that an insurer has breached its duty of good
faith and fair dealing, the insured also must prove that the breach was the proximate
cause of his damages.  In some cases, causation flows directly from the breach, as where
the insurer has improperly rejected a within-limits demand that would have fully
protected the insured.  On the other hand, if there is no evidence that the claim could
have been settled, then any bad faith conduct would not have been the cause of the excess

In essence, MI Windows argues that a policyholder should not have to pay for anything done in bad faith. Although this has some intuitive appeal, it is not a fair characterization of South Carolina bad faith law. A more accurate statement would be that the policyholder does not have to pay anything more than it would have paid had the insurer acted in good faith. The latter characterization recognizes that even if an insurer's contractual performance includes actions done in bad faith, the overall performance may still have some value to the policyholder.[3] Like any contract or tort action, the fundamental purpose of an action for bad faith is to compensate policyholders for actual harm rather than punish defendants for perceived unreasonableness. Requiring sufficiently definite proof of what might have happened absent an insurer's bad faith in settling cases keeps the focus of a bad faith action on this actual harm.

### b.    Defense Costs

For the same reasons explained above, the disputed defense costs awarded to Liberty Mutual for breach of contract do not constitute damages resulting from Liberty Mutual's bad

---

judgment."); *id.* at § 23.02[6][d][i] ("Even if an insurer has failed to investigate or to properly evaluate the claim against the insured and even if the insurer has adopted an improper no-settlement approach, such misconduct does not cause any excess judgment against the insured unless the claim could have been settled had the insurer acted differently."); *id.* at § 23.02[4][c] ("Failure to inform the insured of a settlement opportunity, standing alone, is not a basis for liability unless that failure caused harm to the insured").

[3]     For example, as in *Tyger River*, an insurer may unreasonably refuse a settlement within policy limits, causing a policyholder to go to trial and sustain a verdict above policy limits. After trial, the insurer may then indemnify the policyholder up to the policy limits and leave him to pay the additional expense personally. In this situation, although the insurer's bad faith has caused harm to the policyholder, the insurer has still performed its contractual obligation to indemnify up to the policy limits. Accordingly, although the policyholder's excess payment may be recovered as damages, the insurer's contractual performance is not entirely "worthless," and there would be no rationale for the policyholder to recover as damages any deductible paid under the policy.

faith.  MI Windows has not explained, or introduced evidence showing, how defense costs might have been lower if Liberty Mutual had not acted in bad faith.  In fact, given that MI Windows preferred to go to trial in each of the cases Liberty Mutual settled, it is much more likely that defense costs would have been significantly higher if Liberty Mutual had complied with MI Windows' wishes.

### c.    Claim Fees

MI Windows also argued that Liberty Mutual acted in bad faith by charging excessive claim handling fees.  As discussed above, the jury found that Liberty Mutual breached the insurance contracts by charging more than one claim handling fee for each underlying case.  The jury awarded MI Windows approximately the amount it requested for these excess claim fees.  Allowing MI Windows to recover the same damages again under a cause of action for bad faith would constitute an impermissible double recovery.  *See Collins Music Co. v. Smith*, 503 S.E.2d 481, 482 (S.C. Ct. App. 1988) ("It is well settled in this state that there can be no double recovery for a single wrong and a plaintiff may recover his actual damages only once.") (quotation omitted).  More fundamentally, even in the absence of such a double recovery, an insurer's attempt to bill its policyholder for claim handling fees that are not clearly authorized by the policy does not give rise to an action for bad faith.

The South Carolina Supreme Court has on several occasions described the tort of bad faith in broad terms, stating, for example, that "if an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." *Nichols*, 306 S.E.2d at 340.  As discussed above, the term "claim" is not defined in the insurance policies and is ambiguous in

meaning. Although, in the face of this ambiguity, the court adopted an interpretation favoring MI Windows, Liberty Mutual's interpretation is in no sense "unreasonable."

Although every contract contains an implied duty of good faith and fair dealing, breach of this duty does not generally give rise to liability in tort. The South Carolina Supreme Court has noted that "[a] bad faith tort action arises from the common law due to special characteristics of the insurance relationship," and has emphasized its "reluctance to extend tort actions for violating good faith obligations." *Masterclean, Inc. v. Star Ins. Co.*, 556 S.E.2d 371, 374-76 (S.C. 2001). Two duties in particular – the duty to defend and the duty to promptly pay valid claims – illustrate the "special characteristics of the insurance relationship" and form the basis of most bad faith law in South Carolina and nationwide. An insurer defending its policyholder against a lawsuit exercises broad discretion and has the ability to harm the policyholder's interests in various ways. Similarly, an insurer that wrongfully refuses to pay a valid claim may cause harm to a policyholder in a time of need. Even if the policyholder eventually succeeds in recovering the amount due through a suit for breach of contract, the policyholder may have suffered harm in the meantime that is not compensated by such a recovery.

By contrast, nothing about an insurer's charging of excessive claim handling fees either calls for or justifies an extra-contractual remedy. Unlike the situations described above, where the insurer is in a position to exercise its power and discretion to the detriment of the policyholder, in this case the "special characteristics of the insurance relationship" are largely absent. The dispute is much closer to an ordinary disagreement over payment for services rendered under a contract, and it is difficult to imagine a situation in which contractual damages are insufficient to compensate the policyholder. Although MI Windows' position appears to be

that any breach of an insurance contract by the insurer may constitute bad faith, the court declines to extend the tort of bad faith in such a way in the absence of any reasonable justification.

### d.        Costs and Attorney Fees

MI Windows seeks to recover its costs and attorney fees in this case as consequential damages of Liberty Mutual's bad faith.  As Liberty Mutual points out, there is no South Carolina precedent awarding such costs and attorney fees as consequential damages in a case where the insurer has not denied coverage.  However, even assuming that this court were to accept MI Windows' contention that "in a bad faith action, attorneys' fees reasonably incurred in the prosecution or defense of a case represent a portion of the insured's compensatory damages," ECF No. 305 at 3-4, costs and attorney fees would not be recoverable in a case where no other damages were recovered.  Such fees cannot be said to be "reasonably incurred."

### iii.        Statute of Limitations

Liberty Mutual finally moves for judgment as a matter of law on MI Windows' bad faith claim on the ground that it is barred by the statute of limitations.  The court rejects this argument for the same reasons previously explained in its March 30, 2010 order.  ECF No. 138 at 16-17.

### iv.        Judgment as a Matter of Law

Because a reasonable jury would not have a legally sufficient evidentiary basis to find that MI Windows suffered damages as a result of any bad faith by Liberty Mutual, Liberty Mutual's renewed motion for judgment as a matter of law is granted as to MI Windows' bad faith claim.  Although Rule 50(b)(2) permits the court to order a new trial rather than entering judgment as a matter of law, the court finds no justification for a new trial on this issue.  Accordingly, judgment is entered in favor of Liberty Mutual.

21

### v.    Punitive Damages

Liberty Mutual moves for judgment as a matter of law as to bad faith punitive damages. Because the court finds that MI Windows has not proven actual or consequential damages resulting from any bad faith on the part of Liberty Mutual, the award of punitive damages cannot stand. *Cook v. Atlantic Coast Line R.R. Co.*, 190 S.E. 923, 924-25 (S.C. 1937). Accordingly, the court does not address Liberty Mutual's arguments.

### III.    Liberty Mutual's Motion for New Trial Based on Weight of the Evidence

Liberty Mutual argues that the court should grant a new trial on MI Windows' bad faith claim because the jury's verdict is against the clear weight of the evidence and amounts to a miscarriage of justice. "If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c)(1).

After a jury trial, the district court may "grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). More specifically, a district court may grant a new trial if, "consider[ing] the evidence in the light most favorable to the jury verdict, the court concludes that "the jury verdict is against the clear weight of the evidence, and to allow such verdict to stand would result in a miscarriage of justice." *Ludrick v. Roland*, 270 F. Supp. 692, 693 (D.S.C. 1967). Absent such a finding, "the fact that the court would have reached a different result than the jury verdict is no proper basis for granting a new trial." *Id.* at 695.

As required by Rule 50(c)(1), the court conditionally rules that a new trial should not be granted if the judgment is later vacated or reversed. The court does not find that the jury's

verdict as to Liberty Mutual's liability for bad faith is against the clear weight of the evidence, or

resulting in a miscarriage of justice.  Furthermore, if it is held as a matter of law that MI

Windows may recover the entire settlement amounts as bad faith damages, there is no question

that these amounts have been proven.  Accordingly, the conditional motion for a new trial on MI

Windows' bad faith claim is denied.

### IV.    Liberty Mutual's Motion to Reduce Punitive Damages

Liberty Mutual also argues that the punitive damages verdict is excessive, and that the

court should either order remittitur or reduce the verdict on constitutional grounds.  Because the

award of punitive damages cannot stand in the absence of actual or consequential damages, the

court does not address these arguments.

### V.    MI Windows' Motion for Judgment as a Matter of Law or Amendment of Judgment

MI Windows argues that the damages awarded to Liberty Mutual on its breach of contract

claim are excessive.  MI Windows therefore requests that the court enter judgment as a matter of

law under Rule 50 of the Federal Rules of Civil Procedure, or alter or amend the judgment under

Rule 59(e), to reduce the verdict.  Courts have occasionally reduced verdicts as a matter of law

when "it is apparent as a matter of law that certain identifiable sums included in the verdict

should not have been there."  Wright, Miller & Kane, 11 *Federal Practice & Procedure, Civil 2d*

§ 2815 (2012); *see, e.g., Westchester Fire Ins. Co. v. Hanley*, 284 F.2d 409 (6th Cir. 1960).

However, courts have more often found such a practice to infringe the Seventh Amendment right

to trial by jury.  *See, e.g., Brewer v. Uniroyal, Inc.*, 498 F.2d 973, 976 (6th Cir. 1974).  The

general rule is that when the trial court finds a verdict to be excessive in light of the facts

introduced at trial, the court must "require a remittitur or order a new trial."  *Cline v. Wal-Mart*

23

*Stores, Inc.*, 144 F.3d 294, 305 & n.2 (4th Cir. 1998).  That is, the court must give the plaintiff

the option to either accept a reduced verdict or have a new trial.  Accordingly, the court construes

MI Windows' motion to include a request for remittitur.

### A.     Proof of Correct Allocation

MI Windows first argues that Liberty Mutual failed to prove damages resulting from the

*Marais* settlement.[4]  The property damage giving rise to liability in *Marais* lasted for several

years and triggered policies issued by both Liberty Mutual and Zurich.  The case was ultimately

settled for $500,000.  Liberty Mutual and Zurich agreed to split defense and settlement costs,

with Liberty Mutual paying 42% and Zurich paying 58% toward the settlement.  Based on this

agreement, Liberty Mutual contributed $210,000 toward the settlement, which it seeks to recover

from MI Windows in its breach of contract action.

In *Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co.*,

717 S.E.2d 589, 603 (S.C. 2011) ("*Crossmann II*"), the South Carolina Supreme Court held that

when a loss results from progressive property damage spanning multiple standard general

commercial liability policies, each policy is required to "cover only that portion of a loss

attributable to property damage that occurred during its policy period."  "In light of the difficulty

in proving the exact amount of damage incurred during each policy period," the supreme court

---

[4]     Liberty Mutual argues that MI Windows stipulated to the amount of breach of
contract damages, and that this stipulation relieved Liberty Mutual of the burden of
proving a factual basis for its damages.  *See* ECF No. 244 at 86-87.  However, this
stipulation established only the amount claimed by Liberty Mutual.  MI Windows did not
agree that this amount accurately reflected its liability or a correct allocation under
*Crossmann II*.  In fact, MI Windows continued to argue during trial and in its motion for
directed verdict that Liberty Mutual had not presented evidence from which a proper
allocation could be made.  *See* ECF No. 252 at 42-47.

adopted a default "time on risk" method for allocating shares of loss. *Id.* at 602-03. Under this default rule, each policy must only cover a percentage of the total loss obtained by dividing the length of the policy period by the total duration of the progressive damage.

MI Windows argues that Liberty Mutual cannot show that MI Windows breached the insurance contracts by failing to reimburse Liberty Mutual for the *Marais* settlement without proving which portion of the $500,000 settlement is actually covered by its policies. On the other hand, Liberty Mutual argues that under the plain language of the contracts, MI Windows agreed to reimburse Liberty Mutual for the first $500,000 of defense and indemnity costs per occurrence, including damages paid as a result of a settlement. Liberty Mutual contends that by showing that it paid $210,000 toward the *Marais* settlement and that MI Windows never repaid this money, it has presented evidence sufficient to establish that MI Windows breached the contracts.

Under the insurance policies, Liberty Mutual agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' *to which this insurance applies*." *See, e.g.*, ECF No. 17-8 at 18 (emphasis added). *Crossmann II* established that in a progressive damage situation, an insurance policy only "applies to" the portion of property damage occurring during the policy period, a portion which by default is determined by a "time on risk" percentage calculation. For example, assuming the progressive damage giving rise to liability in *Marais* lasted for only two years and triggered one Liberty Mutual policy and one Zurich policy, each policy would only cover half of any settlement. That is, for a $500,000 settlement, the Liberty Mutual policy would only cover $250,000 as loss. Any amount greater than $250,000 paid by Liberty Mutual toward the settlement would not be paid to satisfy its contractual obligations; rather, it would be a bonus or volunteer payment.

25

For its part, MI Windows agreed to reimburse Liberty Mutual for all "reimbursable expenses" up to the $500,000 per occurrence deductible, defined to include "damages" as well as "legal fees, costs and expenses." *See, e.g.*, ECF No. 17-8 at 64. The critical question is whether MI Windows agreed to reimburse Liberty Mutual for *any* damages paid by Liberty Mutual on behalf of MI Windows, or only for "damages because of . . . 'property damage' to which [the] insurance applies." *See, e.g.*, ECF No. 17-8 at 18. In other words, does a policyholder breach the insurance contract by failing to reimburse the insurer for expenses the insurer was not obligated to pay under the contract? Although the court does not consider the circumstances under which an insurer may bring an action in equity to recoup expenses mistakenly paid on behalf of a policyholder, the court finds that it would be anomalous if an insurer could cause a policyholder to incur a *contractual* reimbursement obligation by spending money in ways that were not contemplated by the contract. Accordingly, payments made by Liberty Mutual for damages not covered by its policies are not "reimbursable expenses."

Liberty Mutual argues that "there is no evidence that [it] paid any amount at *Marais* 'for damages occurring outside its policy's effective dates.'" ECF No. 314 at 8. The problem, though, is that there is no evidence showing that the money Liberty Mutual paid for the *Marais* settlement was for damages *inside* its policy's effective dates. Liberty Mutual failed to introduce evidence revealing either the duration of the progressive property damage giving rise to liability in *Marais* or the policies triggered by this damage. In the absence of such evidence, it is impossible to determine what percentage of the $500,000 settlement is covered by Liberty Mutual's policies. And without knowing what amount MI Windows was obligated to reimburse, there is no basis to find it liable for breach of contract for failing to reimburse Liberty Mutual for

26

the *Marais* settlement.

The breach of contract damages awarded to Liberty Mutual included the $210,000 spent on the *Marais* settlement.  Because Liberty Mutual did not prove its entitlement to this amount, the judgment in favor of Liberty Mutual must be remitted by $210,000.

**B.     Allocation of Defense Costs**

MI Windows also contends that the damages awarded for the *Marais* settlement are excessive for another reason.  MI Windows argues that under South Carolina law, an insurer's duty to defend requires the insurer to provide a complete defense of a case even if other insurers also have a duty to defend the case.  MI Windows therefore argues that the approximately $425,000 spent to defend in *Marais* must be applied toward its $500,000 deductible with Liberty Mutual, which would leave MI Windows with only $75,000 to pay in settlement costs (rather than $210,000) before Liberty Mutual's coverage begins.  On the other hand, Liberty Mutual argues that because Zurich also had a duty to defend in *Marais*, and because Liberty Mutual and Zurich agreed to share defense costs 50/50, only half the defense costs should be applied toward its deductible.

"The duty to defend is separate and distinct from the obligation to pay a judgment rendered against the insured" and is "personal to each insurer."  *Sloan Const. Co., Inc. v. Central Nat. Ins. Co. of Omaha*, 236 S.E.2d 818, 820 (S.C. 1977).  "The obligation is several and the insurer is not entitled to divide the duty nor require contribution from another absent a specific contractual right."  *Id.*

Liberty Mutual argues that *Sloan* is inapposite here because it dealt with a dispute between two insurance companies covering the same risk rather than a dispute between an insurer

and a policyholder.  Liberty Mutual contends that *Sloan* held only that "where two companies insure the identical risk and both policies provide for furnishing the insured with a defense, neither company, absent a contractual relationship, can require contribution from the other for the expenses of the defense where one denies liability and refuses to defend."  *Sloan*, 236 S.E.2d at 820.  However, this holding was based on the premise that each insurer had a personal, indivisible duty to provide a complete defense for the policyholder – this is precisely why one insurer was not harmed by the other insurer's refusal to contribute to defense costs.  Liberty Mutual does not explain how a private agreement with another insurer could alter its personal, indivisible duty to fully defend MI Windows.

Liberty Mutual also argues that *Sloan* is distinguishable because its policies did not insure risk identical to that insured by Zurich.  Rather, Liberty Mutual and Zurich each insured different, non-overlapping periods of time during a period of progressive water damage lasting several years.  However, under South Carolina law, an insurer's duty to defend is triggered if *any* cause of action in a complaint seeks damages covered by the policy.  *See, e.g., Town of Duncan v. State Budget and Control Bd.*, 482 S.E.2d 768, 773-74 (S.C. 1997).  Similarly, even though Liberty Mutual's policies would only cover a percentage of the loss in *Marais*, this is sufficient to trigger the duty to defend.  Once triggered, this duty obliges Liberty Mutual to provide a complete defense.

Although the South Carolina Supreme Court in *Crossmann II* explicitly adopted a policy of allocating loss among multiple insurance policies based on time on the risk, it did not suggest or imply that an insurer's duty to defend could be allocated in the same way.  Accordingly, this court holds that an insurer is obliged to provide a full defense to its policyholder even if the

28

insurer's policies cover only a portion of the progressive damage underlying the lawsuit. The court expresses no opinion as to whether such an insurer is entitled to any contribution toward defense costs from other insurers whose policies also cover portions of the same progressive damage.

Because Liberty Mutual was obligated to provide a complete defense in *Marais*, MI Windows is entitled to apply all defense costs for that case, approximately $425,000, against its $500,000 deductible. However, the court found above that the judgment against MI Windows must be reduced by $210,000 because there was insufficient evidence to show that MI Windows breached the insurance contracts by failing to reimburse Liberty Mutual for its share of the *Marais* settlement. Accordingly, even if the entire *Marais* defense costs are credited toward the deductible, the total costs for *Marais* are still within MI Windows' deductible. MI Windows is therefore entitled to no further reduction of the judgment.

### C.    Remittitur

The court finds that the judgment in favor of Liberty Mutual must be remitted by $210,000, resulting in a revised judgment of $684,416.01. Within fourteen days, Liberty Mutual must notify the court whether it wishes to accept the reduced verdict or have a new trial on its breach of contract claim.

## VI.    MI Windows' Motion for Attorney Fees

In addition to MI Windows' request for attorney fees as consequential damages of bad faith, addressed above, MI Windows moves for an award of attorney fees under S.C. Code § 38-59-40 and under *Hegler v. Gulf Insurance Company*, 243 S.E. 443 (S.C. 1979). Under S.C. Code § 38-59-40(1), an insurer who refuses to pay "a claim, loss, or damage . . . covered by a policy of

29

insurance . . . without reasonable cause or in bad faith" may be liable to the policyholder for attorney fees spent in the prosecution of the case against the insurer.  This statute has also been construed to authorize an award of attorney fees where an insurer refuses to defend an insured "without reasonable cause."  *Boggs v. Aetna Cas. and Sur. Co.*, 252 S.E.2d 565 (S.C. 1979).  However, the present case does not involve a refusal to pay benefits or a refusal to defend.  Although MI Windows would read the statute to authorize attorney fees when an insurer fails to provide "an adequate, good faith defense," ECF No. 305 at 8, this is far from the plain meaning of the statute, and the court declines to rewrite the statute in such a way.

In *Hegler v. Gulf Insurance Co.*, 243 S.E.2d 443 (S.C. 1978), the South Carolina Supreme Court held that a policyholder who had successfully defended a declaratory judgment action brought by an insurer alleging no coverage could recover attorney fees.  The supreme court held that:

> There is no material difference in the legal effect between an outright refusal to defend and in undertaking the defense under a reservation of rights until a declaratory judgment is prosecuted to resolve the question of coverage.  In either event, an insured must employ counsel to defend in the first instance in the damage action and in the second in the declaratory judgment action to force the insurer to provide the defense.  In both, the counsel fees are incurred because of the insurer's disclaimer of any obligation to defend.

*Hegler*, 243 S.E.2d at 444.  Furthermore, in *Security Insurance Co. of Hartford v. Campbell Schneider & Associates, LLC*, 481 F. Supp. 2d 496 (D.S.C. 2007), the district court held that *Hegler* also authorizes attorney fees for a policyholder who has successfully defended a declaratory judgment alleging no duty to defend.  Contrary to MI Windows' suggestion, *Hegler* pertains specifically to a declaratory judgment action where an insurer has denied its duty to cover a loss or defend a policyholder, and does not generally authorize attorney fees where a

30

policyholder has "successfully assert[ed] his rights against [an insurer]." ECF No. 305 at 8. Liberty Mutual has not disputed coverage of MI Windows' claims or its duty to defend MI Windows at any point in this litigation. Even if MI Windows were successful in its bad faith action, it would not be entitled to attorney fees under section 38-59-40 or *Hegler*.

**VII.     Motions for Costs and Interest**

Liberty Mutual and MI Windows both move for an award of taxable costs under Rule 54(d)(1) of the Federal Rules of Civil Procedure. Liberty Mutual also moves for an award of pre-judgment interest pursuant to S.C. Code § 34-21-20. The court holds its ruling on these motions in abeyance pending Liberty Mutual's decision on remittitur.

## CONCLUSION

Liberty Mutual's motion for judgment as a matter of law (ECF No. 292) is granted as to MI Windows' claim for bad faith and denied as to MI Windows' claim for breach of contract. Liberty Mutual's motion for a new trial on MI Windows' claim for bad faith (ECF No. 291) is denied. Liberty Mutual's motion to alter or amend the judgment as to punitive damages (ECF No. 293) is denied as moot. MI Windows' motion for attorney fees (ECF No. 305) is denied.

MI Windows' motion for judgment as a matter of law or to amend the judgment (ECF No. 297) is partially granted, and the court finds that the amount awarded to Liberty Mutual must be remitted by $210,000. Within fourteen days, Liberty Mutual must notify the court whether it elects to accept a reduced verdict of $684,416.01 on its breach of contract claim or have a new trial on that claim. Ruling on Liberty Mutual's motions for an award of pre-judgment interest

[continued on following page]

and costs (ECF Nos. 282 & 283) and MI Windows' motion for an award of costs (ECF No. 304)

is held in abeyance pending Liberty Mutual's response.

**IT IS SO ORDERED.**

<div style="margin-left: 50%;">

s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
Chief United States District Judge

</div>

August 10, 2012
Columbia, South Carolina