# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Liberty Mutual Fire Insurance Company ) <br> and Employers Insurance of Wausau, ) <br> a Mutual Company, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> J.T. Walker Industries, Inc., f/k/a ) <br> Metal Industries, Inc., f/k/a ) <br> MI Home Products, Inc., and ) <br> Metal Industries Inc. of California, ) <br> ) <br> Defendants, ) <br> ) <br> vs. ) <br> ) <br> MI Windows & Doors, Inc., ) <br> ) <br> Counterclaimant. ) <br> _____) | Civil Action No. 2:08-02043-MBS <br><br><br><br><br><br> **ORDER AND OPINION** |

This matter is before the court on remand from the Court of Appeals for the Fourth Circuit. The Fourth Circuit instructed this court to determine whether the evidence presented at trial supported the jury's finding that Liberty Mutual Fire Insurance Co. ("Liberty") acted willfully, wantonly, or in reckless disregard of the rights of MI Windows ("MI"). *Liberty Mut. Fire Ins. Co. v. J.T. Walker Indus., Inc.*, 554 F. App'x 176, 190 (4th Cir. 2014). If there is sufficient evidence for such a finding, then the court is to consider objections to the amount of punitive damages awarded to MI. *Id*.

1

## I. PROCEDURAL BACKGROUND

This case involves a dispute over the settlement by Liberty of several lawsuits against MI, which Liberty settled in its capacity as MI's insurer. Liberty filed this action in 2008 seeking declaratory relief concerning the triggering of insurance coverage, allocation, and the right to refuse and control settlement. ECF No. 1 (Complaint). Liberty also sought damages for breach of contract. ECF No. 1. MI countersued for contrary declarations and for damages for breach of contract and bad faith. ECF No. 13 (Answer & Counterclaim).

The Fourth Circuit summarized the underlying facts giving rise to this case as follows. MI is a manufacturer of windows and doors. *Liberty Mut. Fire Ins. Co.*, 554 F. App'x at 180. During the relevant time period, Liberty insured MI under several policies. *Id*. These policies "conferred upon Liberty the duty and right to defend MI against lawsuits claiming property damage. They also vested in Liberty the discretion to 'investigate any occurrence and settle any claim or suit that may result.'" *Id*. The Fourth Circuit left undisturbed this court's previous holdings that the insurance policies between Liberty and MI gave Liberty "a duty and a right to control the defense and settlement" of the underlying claims and that MI did not have the right to approve the settlement decisions. *See* ECF No. 138 at 4-5, 8 (this court's order on summary judgment).

During the period covered by the policies, MI was named as a defendant in five property damage lawsuits and tendered each to Liberty. *Liberty Mut. Fire Ins. Co.*, 554 F. App'x at 180-81. The five suits were: *Avian Forest*, *Tilghman Shore*, *Riverwalk*, *Magnolia North*, and *Marais*.[1]  *Id*.

---

[1]*Avian Forest Homeowners' Ass'n v. MI Windows & Doors, Inc. et al.,* CA No. 02–CP–22–0687, Horry County, South Carolina; *Tilghman Shores Homeowners' Ass'n v. MI Windows, et al.,* CA No. 03–CP–26–4021, Horry County, South Carolina; *Riverwalk at Arrowhead Country Club Prop. Owners' Ass'n, Inc. v. MI Home Products, et al.,* CA No. 03–CP–26–7169, Horry County, South Carolina; *Magnolia*

2

Despite MI's expressed desire to proceed to trial on four of the five, Liberty settled each of the five lawsuits. *Id*. at 181. For each case, Liberty set a reserve amount representing an estimate "of losses due to MI's potential exposure" and estimated defense costs. *See id*. at 181-82 (summarizing Liberty's process for setting reserves and its settlement in each of the five underlying claims).

In each of the underlying lawsuits, MI potentially was subject to joint and several liability with other defendants, including the developers and contractors. "One adverse verdict, subject to joint and several liability, in any of the five underlying claims could have exceeded the total settlement amounts." *Id*. at 188. For four of the underling claims—*Avian Forest*, *Tilgman Shores*, *Riverwalk*, and *Magnolia North*—the defense counsel retained by Liberty advised that there could be no resolution of the cases on summary judgment and that in each case MI's likelihood of success was no better than fifty percent. *See id.* at 181-82. In the fifth case, *Marais*, MI accepted some level of responsibility for the alleged property damage and expressed a desire to settle. *Id.* at 182. The mediator in the case estimated that settlement would require between $7 million and $10 million. *Id*. MI's trial counsel referred to *Marais* as a "catastrophically difficult" case. *Id*. at 188. Liberty settled MI's portion of *Marias* for $500,000. The various reserves, estimated defense costs, and settlement amounts are summarized in the following table:

---

*N. Homeowners Ass'n v. MI Windows, et al.,* CA No. 05–CP–26–0044, Horry County, South Carolina; *Marais Prop. Owners' Ass'n v. MI Windows, et al.,* CA No. 05–CP–10–1140, Charleston County, South Carolina. *Liberty Mut. Fire Ins. Co. v. JT Walker Indus., Inc.*, 554 F. App'x at 181 n.1.

|  | **Reserves** | **Estimated Defense Cost** | **Settlement Amount** | **Difference** (Settlement amount - reserves & defense costs) |
|---|---|---|---|---|
| *Avian Forest* | $300,000 | $96,250 | $72,300 | - $323,950 |
| *Tilgman Shores* | $75,000 | $65,000 | $75,000 | - $65,000 |
| *Riverwalk* | $0 | $125,000 | $200,000 | $75,000 |
| *Magnolia North* | $50,000 | $192,000 | $200,000 | - $42,000 |
| *Marais* | $50,000 | $291,000 | $500,000 | $159,000 |
| **Total** | $475,000 | $789,250 | $1,047,300 | - $196,950 |

*See id*. at 181-82.  In the aggregate, the total amount of the settlements was almost $200,000 less than the estimated combined total costs of defense and the reserve amounts set by Liberty.  A portion of these settlement costs were allocated to Zurich, MI's succeeding insurance carrier.  *Id*. at 182.

The Fourth Circuit observed that Liberty settled the underlying cases based on the evidence, the reserve estimates, the nature of the claim, and the potential for joint and several liability.  *Id*. at 181.  The Fourth Circuit concluded that there was not "substantial evidence supporting a finding that [MI] would have either prevailed in the underlying lawsuits or spent less than the settlement amounts on defense and liability."  *Id*.[2]

A seven-day jury trial was held before this court beginning on January 26, 2012.  The jury returned a verdict for both parties.  ECF No. 268.  The jury ruled in favor or Liberty on its breach of contract claim and awarded it damages of $894,416.01.  ECF No. 268.  The jury ruled in MI's

---

[2] This finding is consistent with the previous conclusion by this court that MI "did not introduce evidence showing that any of the cases could have successfully settled for a lower amount." ECF No. 339 at 17.

4

favor on both its breach of contract and bad faith claims, awarding $18,290 in damages for the breach of contract claim and $684,416.01 in damages for the bad faith claim. ECF No. 268. The jury also awarded MI $12,500,000 in bad faith punitive damages. ECF No. 271.

After trial, the court heard several post-trial motions and modified the jury's verdict. Finding that MI had failed to prove any actual or consequential damages as a result of Liberty's bad faith, the court overturned the jury's award of $684,416.01 in consequential damages. *See* ECF No. 339 at 15-19; *see also Liberty Mut. Fire Ins. Co.*, 554 F. App'x at 187-89 (affirming the holding that MI failed to prove actual or consequential damages). Without proof of consequential or actual damages, the court found that MI was not entitled to punitive damages and so also set aside the jury's $12.5 million punitive damages award. The court also found that Liberty was not entitled to a portion of the damages the jury awarded it, and so reduced the jury's award in favor of Liberty to $684.416.01. *See generally* ECF No. 339 (Opinion and Order resolving post-trial motions); ECF No. 345 (Amended Judgment). The parties appealed. ECF Nos. 346 & 348.

The Fourth Circuit issued its opinion affirming all but one of this court's rulings on February 10, 2014. *See Liberty Mut. Fire Ins. Co.*, 554 F. App'x at 193-94. The Fourth Circuit reversed only the court's ruling that absent actual or consequential damages, MI could not receive punitive damages. *Id*. at 189. The Fourth Circuit held that "[a]n absence of ascertainable damages does not necessarily preclude nominal or punitive damages where, as here, the jury finds a party liable for punitive damages." *Id*. "Where a jury finds a willful or reckless invasion of a legal right, a court presumes that nominal actual damages are merged into a punitive damage award." *Id.* at 190 (citing *Hinson v. A.T. Sistare Constr. Co.*, 113 S.E.2d 341, 345 (S.C. 1960)). The Fourth Circuit vacated this court's ruling on punitive damages and instructed this court to consider whether sufficient

5

evidence exists to support the jury's finding that Liberty acted willfully, wantonly, or recklessly. *Id*. "If the court finds the evidence sufficient, then nominal damages may be presumed, and the court must consider whether punitive damages are appropriate and whether the jury's award was excessive." *Id*.

The court asked the parties to file post-remand briefs. ECF No. 356. The parties did so. ECF Nos. 363 & 364. These were the subject of responses (ECF Nos. 369 & 371) and replies (ECF Nos. 374 & 375). This briefing was completed on August 1, 2014.

In support of its post-remand brief (ECF No. 364), MI submitted an affidavit by Darlene Moffatt (the "Moffatt Affidavit"), MI's insurance risk manager. *See* ECF No. 364-3. In the affidavit, Moffatt testifies (1) that MI has spent more than $1 million to maintain a letter of credit required by Liberty; and (2) that as a result of this litigation, MI has incurred $1,926,024.11 in attorneys' fees and costs. ECF No. 364-3 at 2. MI seeks to use these figures as measures of the harm MI suffered as a result of Liberty's bad faith. On July 14, 2014, Liberty filed a motion to strike the affidavit. ECF No. 367. MI filed a response on July 18, 2014 (ECF No. 368) and Liberty filed a reply on July 28, 2014 (ECF No. 372).

Oral argument on the post-remand briefs and the motion to strike was held on October 31, 2014. ECF No. 377.

## II. EVIDENCE OF LIBERTY'S RECKLESSNESS

Before the court engages in a *de novo* review of whether the amount of punitive damages awarded by the jury is constitutional under the Due Process Clause, the court must first consider whether there is sufficient evidence in the record developed at trial for the jury to have concluded by clear and convincing evidence that Liberty acted in willful, wanton, or reckless disregard for the

rights of MI. In deciding whether to set aside a jury verdict, a trial court is to determine "whether, viewing the evidence in the light most favorable to the non-moving party [here, MI] and giving him the benefit of all reasonable inferences, there is sufficient evidence in the record to support a jury verdict in his favor." *Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th Cir. 1988).

After a review of the record, the court concludes that there was insufficient evidence to support a jury finding of recklessness under the clear and convincing evidence standard–"the highest burden of proof known to the civil law." ECF No. 265 at 7 (Jury Instructions). There was insufficient evidence in the record to find that Liberty's action in settling the underlying lawsuits was a "conscious failure to exercise due care" in disregard of MI's rights. *See id.* The settlements eliminated a potential for greater liability for MI in the underlying cases. ECF No. 339 at 13; 16 (the settlement "clearly furthers *some* interest of MI Windows to resolve lawsuits against it for around the expected costs of defense and thereby eliminate any possibility of a large trial verdict"; "if MI Windows lost one or more of the [underlying] cases, which is at least possible, it could have faced far greater liability [than the settlement amounts]"); *see also Liberty Mut. Fire Ins. Co.*, 554 F. App'x at 188. The total amount of the settlements was less than the estimated costs of defense and the reserve amounts set by Liberty. *See supra* p. 4. There was no evidence that any of the underlying claims could have been resolved by trial or settlement for less than the settlement amounts. ECF No. 339 at 16-17 ("The evidence introduced at trial does not permit a jury to determine with reasonable certainty the likelihood that MI windows would have won its cases at trial or the amount of money that would have been required for a successful defense . . . . MI Windows did not introduce evidence showing that any of the cases could have successfully been settled for a lower amount."); *see also Liberty Mut. Fire Ins. Co.*, 554 F. App'x at 181. Finally, MI suffered

no actual or consequential damages as a result of Liberty's decisions to settle. ECF No. 339 at 14-21; *see also Liberty Mut. Fire Ins. Co.*, 554 F. App'x at 187-89.

Although it remains true that "the evidence introduced at trial, viewed in the light most favorable to MI Windows, could lead a reasonable jury to conclude that Liberty Mutual settled one or more of the underlying cases for an unreasonably large amount," it does not necessarily follow that Liberty must also have acted with a conscious failure to exercise due care. The record reveals the process by which Liberty evaluated the merits of the claims against MI, the potential liability MI faced, and the various factors Liberty considered when making the settlements. *See Liberty Mut. Fire Ins. Co.*, 554 F. App'x at 181-82. Not only did Liberty adhere to a procedure which, at a minimum, involved the consultation of defense attorneys and an investigation into the merits of the underlying claims, but Liberty's actions did not result in *any* actual or consequential damage to MI. On such a record, the court concludes that there was no basis for a jury to conclude by clear and convincing evidence that Liberty consciously failed to exercise due care.

MI's arguments to the contrary are unavailing. MI argues that the record at trial furnished evidence that Liberty's internal evaluations of the claims in the underlying lawsuits, i.e., that they lacked merit, and Liberty's later evaluations of the claims in the underlying lawsuits as propounded at trial, i.e., that they had a significant danger of resulting in large verdicts for which MI would be jointly and severally liable, contradicted each other. ECF No. 364 at 7-15. MI argues that the jury could reasonably have concluded from this contradiction that Liberty intended from the outset to settle all five claims within policy limits despite MI's strenuous objection. ECF No. 364 at 7-15. MI argues that in that context the jury had ample facts in the trial record from which to conclude by clear and convincing evidence that Liberty behaved willfully, wantonly, or recklessly to the

detriment of MI in that "Liberty's asserted reasons for settling were deliberately misleading." ECF No. 364 at 15, 7. Even assuming, *arguendo*, that there was a deliberate variance between Liberty's public and private evaluations of the claims against MI, that is insufficient evidence to support a finding of recklessness. Indeed, as Liberty's counsel urged at oral argument on the post-remand issues, these differing assessments could simply be the result of Liberty's internal evaluation of what *should* happen in the underlying cases versus the external assessment of trial counsel of what *could* happen. The existence of such a variance is not, without more, clear and convincing evidence of a conscious failure to exercise due care, particularly where MI cannot prove any resulting immediate, foreseeable, or potential harm.

The other two arguments advanced by MI in support of the jury's verdict are similarly flawed. First, MI argues that Liberty "knowingly violated MI's rights by entering into unilateral defense cost sharing agreements with Zurich." ECF No. 364 at 15. MI argues that as a result, "MI was reimbursing both Liberty and Zurich for defense costs, [but] it was receiving credit only for one-half of its overall expenditure towards satisfying Liberty's deductible." ECF No. 364 at 16. This court previously rejected MI's attempt to assert a counterclaim that "Liberty Mutual's refusal to give credit to MI Windows for any of the moneys it received in allocation by Zurich . . . was in bad faith." ECF No. 159; *see also* ECF No. 180 at 5 (order holding that "Liberty Mutual has a right to seek pro rata allocation of costs from other insurers . . . . Defendants are not entitled to prorate any deductibles, and must pay the full deductible for each policy triggered . . . ."). Thus, evidence of the defense cost sharing agreement was not before the jury for the purpose of proving Liberty's bad faith

9

and cannot be used to justify the jury's finding of recklessness.[3]  Second, MI argues that "Liberty violated state law governing the handling and adjustment of insurance claims."  ECF No. 364 at 20.  However, the Fourth Circuit held that on the facts of this case evidence related to Liberty's claims processing is not relevant to the question of Liberty's bad faith.  *Liberty Mut. Fire Ins. Co.*, 554 F. App'x at 186 ("Evidence regarding processing fees did not inform the jury's bad faith finding.").  Thus, claims processing evidence cannot be used as proof of recklessness in the context of MI's bad faith claim.

The court concludes that there is insufficient evidence in the record to support a jury finding by clear and convincing evidence that Liberty acted in conscious disregard for the rights of MI.

### III. CONSTITUTIONAL REVIEW OF PUNITIVE DAMAGES

Because the court concludes that there is insufficient evidence to support the jury's finding that Liberty acted in willful, wanton, or reckless disregard of the rights of MI, the jury award of punitive damages cannot stand.  Accordingly, the court need not address arguments as to the constitutionality of the amount of the punitive damages award.

### IV. MOTION TO STRIKE THE MOFFATT AFFIDAVIT

As noted above, MI submitted the Moffatt Affidavit with details of costs and fees that MI argues should be used as measures of the harm MI suffered as a result of Liberty's bad faith and which MI argues should be considered in the court's analysis of the constitutionality of the amount

---

[3] Further, in light of the South Carolina Supreme Court's subsequent adoption of a "time on risk" approach to the allocation of losses incurred by insurers–the same approach taken by Liberty and Zurich in their cost sharing agreement in this case–the court is reluctant to consider the existence of such an agreement as evidence of a conscious failure to exercise due care.  *See generally Crossman Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589 (S.C. 2011); *see also* ECF Nos. 180 & 204.

of punitive damages awarded to MI. Because MI may not receive punitive damages, the court need not consider the constitutionality of the amount of punitive damages. Thus, Liberty's motion to strike the Moffatt Affidavit is denied as moot.

## V. CONCLUSION

For the foregoing reasons, the court denies Liberty's motion to strike (ECF No. 367) as moot and declines to reinstate the jury's award of punitive damages to MI.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour  
Margaret B. Seymour  
Senior United States District Court Judge

December 2, 2014  
Columbia, South Carolina

11